[No. 4.  First Appellate District.—July 7, 1905.]

·ERIE CITY IRON WORKS, a Corporation, Appellant, v. HENRY L. TATUM, and JOSEPH BOWEN, Respondents.

SALE OF ENGINE—BREACH OF WARRANTY—MEASURE OF DAMAGES.— Where an engine was sold upon warranty of its fitness for use in running machinery, the measure of damages for a breach thereof is the excess of value which it would have had at the time to which

the warranty referred, if it had been complied with, over its actual value at that time, together with a fair compensation for the loss incurred by an effort in good faith to use it.

ID.—CONSEQUENTIAL DAMAGES—REASONABLE CONTEMPLATION OF PARTIES.—Consequential damages are recoverable in such case only in so far as from the circumstances of the particular case they may be reasonably supposed to have been contemplated by the parties when making the contract as the probable result of a breach.

ID.—RESALE OF ENGINE UPON WARRANTY—DELAY IN PAYMENT BY PURCHASERS TO SUBVENDEES—COSTS OF SUIT—ATTORNEY'S FEES.— Where the engine was resold by the purchasers upon a like warranty, the delay of the purchasers to pay for the breach to their subvendees cannot be reasonably supposed to have been contemplated by the parties to the original sale, and the costs of suit of which the original vendor had no notice, and attorneys' fees paid therein to defend against the rewarranty, are not recoverable against the original vendor upon its warranty.

ID.—COMPROMISE OF DAMAGES—INTEREST NOT RECOVERABLE ON SUM PAID.—Where the purchasers compromised the damages with their subvendees, they cannot recover any interest on the principal sum paid against their original vendor, in an action in which breach of its warranty is involved.

ID.—DEFECTS NOT WAIVED BY RETENTION OF ENGINE—REMEDIES OF PURCHASERS—RESCISSION—ACTION—COUNTERCLAIM.—Defects in the engine which constituted the breach of warranty were not waived by retention of the engine. The purchasers had the option either to return the engine and rescind the contract, or retain it and sue for damages for the breach, or may counterclaim the damages in an action for the purchase money.

ID.—CREDIT FOR REPAIRS—FUTURE DAMAGES NOT WAIVED.—A credit given for repairs by inserting a new governor in the engine, which it was supposed would remedy the defects, but which failed to do so, does not constitute a waiver of future damages, or of expense incurred in the continued use of the engine, for which the original vendor is liable. Such credit was in effect a payment which the vendor was bound to make.

ID.—DELAY IN PRESENTING CLAIM—EXCLUSIVE RIGHT OF PURCHASERS— ESTOPPEL.—The delay in presenting the claim for damages for breach of warranty, in addition to the credit for repairs, cannot constitute an estoppel to claim further damages for breach in view of the relations of the parties and that the purchasers had the exclusive right to handle on this coast articles manufactured by the vendor, and were charged with the duty to advance its sales and trade on this coast.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Edward B. Young, for Appellant.

J. P. Langhorne, for Respondents.

HALL, J.—Plaintiff brought an action in 1895 against defendants, wherein it alleged that defendants were indebted to plaintiff in the sum of $735 for one No. 9 Economic boiler sold to defendants by plaintiff January 25, 1895. Defendants answered, and, besides denying said indebtedness, set up a counterclaim.

In the counterclaim, after alleging the copartnership of defendants, and that plaintiff was a corporation of the state of Pennsylvania engaged in the manufacture and sale of steam-engines, defendants alleged: ''3. That on or about the 31st day of August, 1888, defendants purchased of plaintiff, and plaintiff sold and delivered to defendants a so-called automatic cut-off steam-engine for the sum of eight hundred and fifty-seven dollars, which said purchase price defendants paid plaintiff, and defendants also paid $120 freightage on said engine at time of its purchase, from Erie, Pennsylvania, to the Pacific Coast. 4. That defendants ordered said engine of plaintiff and purchased the same as a steam-engine that should be reasonably fit for the purpose of operating and running machinery, and plaintiff furnished the same to defendants as a steam-engine reasonably fit for such purpose; and plaintiff did furthermore expressly warrant that said engine would properly and effectively operate machinery. And defendants purchased said engine of plaintiff relying upon and solely by reason of said implied and express warranties that the same should be reasonably fit for operating machinery, and that it would properly and effectively operate machinery.'' Then follows an allegation of the breach of warranty and of damage to defendants in the sum of $977.

The court made its findings, and among other things found that by reason of the failure of the engine to perform in a proper, efficient, and reasonable manner the work of running machinery defendants have been damaged as of date January 31, 1892, in the sum of $883, and ordered judgment for defendants for $364, ''the same being the excess of the damages $883, with interest thereon at seven per cent per annum from

the 31st day of January, 1892, to date hereof, over and above the sum of $735 claimed in plaintiff's complaint, with interest thereon from the 25th day of January, 1895, to date hereof."

Plaintiff moved for a new trial, and this appeal is from the order denying its said motion.

Appellant specifies insufficiency of the evidence to justify the finding as to damages above quoted; and as we think a new trial must be granted on this ground, we will first dispose of the question thus presented.

At the trial no question was made as to the fact that defendants owed plaintiff $735 for the boiler; and the only real contention was as to the counterclaim set up by defendants against plaintiff.

The engine was purchased by defendants of plaintiff in 1888, and by defendants sold with other things to Glenn and Handley, at Dalles City, Oregon, for the purpose of running an electric light and power plant, and on a warranty such as had been given them by plaintiff. It did not work satisfactorily, and plaintiff supplied a new governor, and in December, 1889, plaintiff gave defendants credit for a bill of expense of $247.55 incurred on the engine, and $27.59 freight paid by defendants on the new governor. The evidence shows without contradiction that the engine still did not efficiently or properly operate the electric light plant; and finally in 1891 defendants sued Glenn and Handley for the balance alleged to be due on their original bill of upwards of $460 for material furnished for the electric light plant, and Glenn and Handley answered, and besides denying any indebtedness on the claim sued on, set up a counterclaim of damages in a large sum growing out of the imperfections of the said engine.

This suit was compromised in January, 1892, by an allowance or deduction of the sum of $219 made to Glenn and Handley by the defendants in this action. We think that as to this deduction of $219 the evidence may be fairly said to show that it was made on account of damages and expenses to which Glenn and Handley had been put subsequent to the first allowance heretofore referred to by reason of the imperfections of the engine. Shortly after this compromise defendants sent a bill to plaintiff for $319, being the $219

I Cal. App.—19

plus $100 paid their attorney in the matter of said suit. This bill plaintiff refused to allow or pay, and the matter was allowed to rest until the present suit.

On the trial of this case the only evidence as to the amount of damage suffered by defendants by reason of the breach of warranty as to the engine was given by Mr. Tatum, a member of the defendant firm. He said: "The damages that my firm sustained on account of defects in the engine subsequent to December 9, 1889" (the date of the first bill of expense which had been paid) "was $319, for which we sent in a claim; that was composed of $100 for attorneys' fee to Woodward & Woodward in the suit that we brought against Glenn and Handley, which was compromised; and then there was $20 court costs; there was $100 attorneys' fees and $219 allowed on our bill; that claim of $319 did not include the freight of $120 paid by us on the automatic cut-off engine, nor the $20 court costs, nor interest on our claim against Glenn and Handley in the sum of $544." The sum of $219, plus $100 attorneys' fees plus $20 court costs, plus $544 interest, amounts to $883, which, it will be observed, is the amount of damages found by the court as of date January 31, 1892.

There was also read in evidence a communication under date January 28, 1892, from the attorneys of Tatum and Bowen (defendants herein) in the suit against Glenn and Handley, purporting to show the loss of Tatum and Bowen on the compromise, in which they say:—

"The expenses of suit and first costs of court....$ 20.00
"Attorneys' fees ............................... 100.00
"Discount allowed defendant on settlement...... 219.00

            "Making total ............$339.00
"To this sum should be added interest on prin-
    cipal sum for 2 years 10 months at legal rate
    of interest 8 per cent per annum, amounting
to.......... ........... ...... .... ........544.00

          "Making total loss .........$883.00"

This statement of the attorneys for defendants made to defendants is not evidence against the plaintiff, and only serves to make clear the basis upon which the court fixed the amount of damages.

The sum of $120 paid by defendants as freight on the engine cannot be considered in fixing the damage, .for it is shown that defendants sold the engine to Glenn and Handley as part of an electric plant before any defect was discovered in the engine, and undoubtedly charged for the engine such price as they thought reasonable, and upon final settlement of their bill against Glenn and Handley the only deduction claimed to have been made from their bill on account of this engine was the sum of $219. Nevertheless the court fixed their damages at the sum of $883, evidently adding to the $219, deducted from their bill, the $100 attorneys' fees, $20 court costs, and $544 interest on defendants' total claim against Glenn and Handley. The bill of defendants against Glenn and Handley included many things besides this engine, and amounted originally to upwards of $4,600, and at the time of the bringing of the suit to over $2,500.

The Civil Code, section 3313, provides that ''The detriment caused by the breach of a warranty of the equality of personal property is deemed to be the excess, if any, of the value which the property would have had at the time to which the warranty referred, if it had been complied with, over its actual value at that time.''

Section 3314 provides that ''The detriment caused by the breach of a warranty of the fitness of an article of personal property for a particular purpose is deemed to be that which is defined by the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purpose.''

No evidence was given as to the actual value of the engine, but all the evidence of damages was directed to consequential damages or loss incurred by an effort to use it.

Speaking of consequential damages in cases of breach of warranty, the court said in *Wilson* v. *Reedy,* 32 Minn. 256, [20 N. W. 153] : ''The rule as to this class of damages, as laid down in *Hadley* v. *Baxendals,* 9 Exch. 341, and approved in *Paine* v. *Sherwood,* 21 Minn. 225, and in *Frohreich* v. *Gammon,* 28 Minn. 476, 481, [11 N. W. 88], is that such damages are recoverable when, from the circumstances of any particular case, they may reasonably have been supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach.''

The evidence in this case does not show that the delay in paying defendants' bill against Glenn and Handley was caused solely by controversy over the engine, but if it did we do not think that such loss can be reasonably supposed to have been contemplated by plaintiff and defendants when the engine was sold by plaintiff to defendants.

We have been cited to no case where attorney fees have been allowed to swell damages in cases of breach of warranty on sale of personal property; but on the contrary, in the case of *Reggio* v. *Braggiotti*, 7 Cush. 166, cited by respondent, it was held that in no case can the attorney fee paid by the first vendee in defending himself in suit brought by his subvendee be allowed to swell damages against the original vendor. The *syllabus* in this last-mentioned case so completely fits the case at bar that we quote it in full: "The measure of damages, in an action brought for a breach of an implied warranty of the genuineness of an article sold as opium, is the value of an article corresponding to the warranty, deducting the value, if anything, of the article sold; *and if the vendor [vendee] has in the mean time sold the article with a like warranty, the sum paid on a judgment obtained against him, in an action brought by his vendee for a breach of that warranty, is prima facie evidence of the amount which he can recover of his vendor; and if he gave notice to his vendor of the commencement of that action, he may also recover his taxable costs therein; but he can in no case recover counsel fees paid for the defense thereof.*" (The italics are ours.)

The same rule is laid down as to taxable costs in a similar case in *Coolidge* v. *Brigham*, 5 Met. 68.

In this case it is not shown that defendants gave plaintiff notice either of the suit they brought against Glenn and Handley, or of the counterclaim set up by Glenn and Handley. Neither the interest on the principal of defendants' claim nor the costs or attorneys' fees should have been included in the damages found; and the finding that defendants were damaged in the sum of $883 is therefore not supported by the evidence.

It is urged by appellants that the engine having been retained after examination and trial, all defects were waived, and no action would lie in favor of defendants on account of the breach of warranty. This is not the law. On the con-

trary, one buying with a warranty, on discovering the breach of warranty, may either return the goods and rescind the contract, or he may retain the goods and bring an action for the breach of warranty, or plead the breach as an offset in any action brought by the vendors for the purchase money. (*Polhemus* v. *Heiman*, 45 Cal. 573.) Indeed, the various authorities cited by appellant concede this to be the rule.

It is also urged by plaintiff that all damages arising from the breach of warranty were paid by appellant by the credit given defendants shortly after supplying the new governor. We do not think that this contention can be sustained. It is probably true that it was believed at the time the said credit was given that the new governor had remedied all defects in the working of the engine, but this proved not to be true. Appellant in giving the credit made a payment which it was legally bound to make, and there is nothing in the record to sustain the proposition that there was any agreement, express or implied, that by so doing it relieved itself from liability for any future damage that might result from an effort to use the engine. On the contrary, it is quite evident that it was intended that Glenn and Handley should, after receiving the new governor, continue the use of the engine. They did so, and were put to much expense in so doing, for which defendants were liable to them, and appellant as the original warrantor to defendants.

Practically the same matter, coupled with delay in presenting claim for damages, is urged by appellant as an estoppel; but having in mind the relation of the parties (defendants had the exclusive right to handle on this coast articles manufactured by appellant, and were charged with the duty to advance its sales and trade on the coast) we see nothing in the case to work an estoppel. Other matters urged by appellant are disposed of by what we have said on the question of damages.

Order denying motion for new trial is reversed.

Cooper, J., and Harrison, P. J., concurred.