### ANTOLE v. GILL & FISHER.

*(District Court, D. Maryland.    January 3, 1881.)*

1. CHARTER-PARTY.—Stipulation that the vessel then at Genoa would *proceed without delay* to Baltimore to load a cargo of grain, *held* to be a condition precedent, and that if the vessel did not so proceed the charterer might refuse to load her.

    *Lowber* v. *Bangs,* 2 Wall. 728.

2. SAME.—Under the circumstances of this case, *held,* that a detention of the vessel for *thirty-one* days at Genoa in discharging a cargo of coal, which she had on board at the date of the charter-party, released the charterer from obligation to load the vessel under the charter-party.

In Admiralty.

Libel *in personam* for breach of charty-party.

*Archibald Stirling, Jr.,* for libellant.

*Marshall & Fisher,* for respondents.

MORRIS, D. J.    The libellant is the owner of the Italian bark Padre, 608 tons, and through his agent in Baltimore chartered her to the respondents, merchants of Baltimore, on the twenty-ninth of September, 1879.

The charter-party was in the usual form of grain charters from the United States to Great Britain, or the continent, and represented the vessel as *"now at Genoa, and to proceed without delay to Baltimore, to enter upon this charter, vessel having permission to take cargo of coals as ballast out."*

The vessel, at the date of the charter-party, (twenty-ninth of September, 1879,) was at Genoa, having arrived there on the twenty-third of September with a cargo of 987 tons of coal. She commenced discharging this cargo at Genoa on the twenty-fifth of September, discharging it into lighters, as is the custom of that port, and did not finish discharging until the thirtieth of October; that is to say, thirty-one days after the date of the charter-party.

Her cargo discharged, the vessel proceeded to take in sand ballast, and, having finished on the fifth of November, sailed for Baltimore on the seventh of November, and arrived in Baltimore on the fourteenth of January, 1880.    She was then duly tendered to the respondents as ready for her cargo

of grain under the charter, but they refused to load her, claiming that they were released from their contract by reason of the failure of the vessel to proceed from Genoa *without delay* to Baltimore. The freight to be paid under the charter was five shillings ten pence half penny per quarter of 480 pounds, and, upon the refusal of respondents, the vessel was at once rechartered for a similar voyage to carry grain to Great Britain, or the continent, at the then best market rate, which had fallen to three shillings nine pence per quarter.

It is the loss to the libellant caused by this difference in freights which he seeks to recover in this suit. Under the decision in *Lowber* v. *Bangs*, 2 Wall. 728, I think the stipulation in this charter-party that the vessel should proceed without delay to Baltimore must be held to be a substantive part of the contract, and its performance a condition precedent to the libellant's right to recover. This case, therefore, in my judgment, turns upon the answer to the question, did the vessel proceed without delay to Baltimore, within the meaning of the contract?

That to proceed without delay was understood to mean, unless qualified, without such delay as would arise from taking a cargo on board, would seem to be indicated by the fact that it was considered necessary to reserve to the owner the privilege of taking on board as ballast a cargo of coal. And this would seem also to show that any other employment of the vessel after the date of the charter-party, except this permitted one, was intended to be excluded.

The master of the vessel, in his testimony, in answer to the inquiry whether there was any unnecessary delay in discharging at Genoa, states that there was no delay except such as unavoidably arose from lightering in bad weather, and says he had "an allowance of 35 tons a working day to discharge the vessel." As the stipulation which the master speaks of fixed 35 tons per working day as the rate of discharge, and as that was what he in fact accomplished, it may be fairly taken as the average and accustomed rate at that port. It would, therefore, appear that at the date of the

charter-party in which the owner contracted that the vessel should proceed without delay to Baltimore to enter upon an engagement to carry grain, she was engaged in an employment, of which no intimation was given to the charterers, which could not be reasonably expected to terminate for 30 days; and before she could be freed from that employment and be made ready for sea there would in all probability be a delay of from 30 to 40 days.

I am unable to see, in the instrument itself, or in the situation of the parties, anything to lead me to think that such a delay was within the intention of the parties, or is within the terms of the contract. The stipulation for the right to load a cargo of coals as ballast rather favors the idea that the vessel was ready to take ballast aboard and enter upon the voyage; and as it is well known that coals could hardly, under any circumstances, be a profitable cargo to bring from Genoa to Baltimore, it may well be that when the charterers consented to that stipulation they counted upon no more coals being put aboard than would suffice for ballast, or that she had then on board from her previous voyage. The permission to take a cargo of coal as ballast was, therefore, by no means equivalent to permission to discharge a cargo of coal. It would be, I think, unwarrantably enlarging the terms of the contract to so construe it as to allow the vessel permission to consume all the time necessary to discharge one cargo of coals and to take on board another,—operations requiring at that port not less than two months. It is a matter of general knowledge that, in charter-parties to carry grain, time is a more essential element in the calculation of the charterer than in other contracts for the use of vessels, and it would seem only fair dealing that such an obstacle as existed in this case to the possibility of the vessel proceeding without delay should have been made known to the charterers.

I have been unable to satisfy myself that the vessel did proceed without delay, as stipulated, and I will sign a decree dismissing the libel.

NOTE. See *Von Lingen* v. *Davidson,* 1 FED. REP. 178, and 4 FED. REP. 346.