## ANTOLA *v.* GILL & FISHER.

(*Circuit Court, D. Maryland.* May 21, 1881.)

1. CHARTER-PARTY.

> Stipulation that vessel, "now at Genoa. to proceed *without delay* to Baltimore, to enter upon this charter; vessel having permission to take cargo of coals as ballast out." The vessel remained at Genoa 31 days, discharging a cargo of coals, before she began to take in ballast for the voyage.
>
> *Held,* that the language implied that there was nothing in the existing engagements of the vessel to prevent her entering upon her new contract at once; that the delay, so far as it concerned the charterers, was, under the stipulation, unreasonable, and that they were absolved from loading the vessel when tendered to them.
>
> *Antola* v. *Gill,* 5 FED. REP. 128, affirmed.

In Admiralty. Appeal from district court.

*A. Stirling, Jr.,* for libellant.

*Marshall & Fisher,* for respondents.

WAITE, Circuit Justice. On the 29th of September, 1879, Antola, the libellant and owner of the Italian bark Padre, through a firm of ship-brokers in Baltimore, chartered his vessel to Gill & Fisher, the respondents, to carry a cargo of grain from Baltimore to some safe port in the United Kingdom, or on the continent between Havre and Hamburg. The charter-party contained the following: "Bark  *  *  *  now at Genoa, and to proceed without delay to Baltimore to enter on this charter; vessel having permission to take cargo of coals as ballast out." When the charter was effected the vessel was at Genoa. She had arrived on the 23d of September, with a cargo of 987 tons of coal, to be delivered to consignees at that port. The delivery commenced on the 25th of September, but was not finished until the 30th of October. The vessel then took in sand for ballast, and on the 7th of November sailed for Baltimore. There was no unnecessary or unusual delay either in putting out the cargo or in getting ready to sail after that was done; under her contract for taking the coal to Genoa the vessel was allowed thirty-five tons a day, working days, to discharge.

After leaving Genoa the vessel proceeded on her voyage without unnecessary delay, and reached Baltimore on the 14th of January. She was then promptly tendered the respondents under her charter, but they refused to accept her, on the ground that she had not proceeded from Genoa to Baltimore "without delay." Thereupon the owner brought this suit *in personam* against the charterers to recover his damages. The district court on these facts, which are undisputed, dismissed the libel, and from that decree this appeal was taken.

We have had no difficulty in reaching the conclusion that the district judge was right in the view he took of the case. As he very properly said in his opinion, under the rule established by the supreme court in *Lowber* v. *Bangs*, 2 Wall. 728, the stipulation that the bark should proceed to Baltimore without delay. was a condition precedent, and not a mere representation. Indeed, that was conceded in the argument here. If, then, that condition was broken by the owner, he cannot recover.

Charter-parties are commercial contracts, and must be construed accordingly. It was said by Mr. Justice Swayne, speaking for the supreme court, in *Lowber* v. *Bangs*, *supra*, 739:

"Promptitude in the fulfilment of engagements is the life of commercial success. The state of the market at home and abroad, the solvency of houses, the rates of exchange and of freight, and various other circumstances which go to control the issues of profit or loss, render it more important in the enterprises of the trader than in any other business. The result of a voyage may depend upon the day the vessel arrives at her port of destination, and the time of her arrival may be controlled by the day of her departure from the port whence she sailed. We cannot forget these considerations in our search for the meaning of this contract."

These observations are applicable to the present case. The contract was that the vessel should proceed without delay to Baltimore, to enter upon the charter. No intimation is given of any necessity for staying at Genoa to discharge. The language used clearly implied that there was nothing in the existing engagements of the vessel to prevent her entering on

the performance of the new contract at once. As coal might be taken for ballast, it is possible that stopping for a reasonable time to put on such a cargo for that purpose might not be "delay" within the meaning of that term as then understood by the parties. That probably would be doing no more than was provided for, as ballast might be necessary to enable her to proceed. But permission to take ballast only implies such delay as is necessary to get the ballast on board. Its effect in the present charter was to bind the vessel to get her ballast on board if necessary without delay, and then proceed on her voyage to Baltimore.

The question then is whether this was done. We have no hesitation in saying it was not. The vessel was bound to begin the performance of the contract without *any* delay. Confessedly, she did not begin until the expiration of 31 days from the time the charter-party was signed, and this because it took her all that time to get rid of the obligations of another contract she was under to deliver a cargo she had on board to consignees in Genoa. In other words, she was *delayed* in the performance of her new contract because she was bound by an old one. She was not ready to proceed from Genoa when her charter sued on was effected, and her departure was afterwards unreasonably delayed, so far as the respondents are concerned. By staying at Genoa to discharge her cargo she saved the profits of her old contract, but we think she is not now in a condition to throw the losses of the new one upon her charterers.

It follows that the decree of the district court must be affirmed and the libel is, consequently, dismissed.