OLSEN v. HUNTER–BENN & CO.[1]

(District Court, S. D. Alabama. October 29, 1892.)

1. SHIPPING—CHARTER PARTY—"ALL CONVENIENT SPEED."

The provision in a charter party that the vessel chartered shall proceed to port of loading "with all convenient speed" is equivalent to a contract that she shall proceed without unnecessary delay, and implies an agreement that it shall be without unreasonable delay, and these are conditions precedent.

2. SAME—"AT PORT OR SAILED."

The provision in a charter party that the vessel to be chartered is "at Santos, or sailed," is a contract that she will soon sail, or has sailed, therefrom.

3. SAME—REASONABLE DILIGENCE.

One of the conditions implied in a charter party is that the vessel will commence the voyage with reasonable diligence, and this is violated by waiting over four months to carry out a previous contract before beginning the new one.

4. AGENT—POWER TO WAIVE CONDITIONS.

An agent to load cargoes has not, in general, power to waive forfeiture of charter party, so as to bind his nonresident principal.

5. SHIPPING—CHARTER PARTY—WAIVER OF FORFEITURE.

The advancement by an agent of a small sum, without commissions, to a delayed vessel, is not a waiver of forfeiture of charter party by delayed arrival, when accompanied by a declaration that he did not know what his principal, the charterer, would do about the delay.

In Admiralty. Libel in personam to recover damages for breach of charter party. Libel dismissed.

G. L. & H. T. Smith, for libelant.
Pillans, Torrey & Hanaw, for defendants.

TOULMIN, District Judge. On the 27th day of July, 1891, the libelant, and owner of the Norwegian bark Franklin, through an agent in Pensacola, Fla., chartered his vessel to the defendants to carry a cargo of timber from Ship island, Miss., to some port in the United Kingdom. The charter party, among other stipulations, contained the following:

"Ship or vessel now at Santos, or sailed. * * * Said ship, being * * * and in every way fitted for the voyage, shall, with all convenient speed, sail and proceed to Ship island, Miss., and there load for the said charterers a full and complete cargo, to consist of," etc.

[1] Reported by Peter J. Hamilton, Esq., of the Mobile, Ala., bar.

When the charter was effected the vessel was at Santos. She had arrived there on the 31st of May, 1891, with a cargo of coal to be delivered to consignees at that port. The discharge of this cargo commenced on the 3d of September, and was not finished until the 1st of November. The vessel then took in ballast, and on the 16th of December sailed for Ship island. After leaving Santos the vessel proceeded on her voyage, without unnecessary delay, and arrived at Ship island on the 3d of February, 1892. She was then tendered the defendants, under the charter, but they refused to accept her, on the ground of her long delay in reaching Ship island. Thereupon the owner brought this suit in personam against the charterers to recover damages. It appears from the evidence that when the vessel arrived at Santos she was not able to obtain a berth, at once, for the discharge of her cargo of coal. It also appears that the vessel lost two masters by death, and had much sickness among the crew, during the time she lay at Santos.

Under the rule established by the supreme court in Lowber v. Bangs, 2 Wall. 728, I think the stipulation that the vessel should, with all convenient speed, proceed to Ship island, was a condition precedent. Abb. Shipp. p. 332; The B. F. Bruce, 50 Fed. Rep. 123. The contract was that the vessel should proceed "with all convenient speed" to Ship island to enter upon the charter. I consider the stipulation that the vessel "should, with all convenient speed, proceed," as equivalent to a stipulation that she should proceed without unnecessary delay. And the shipowner, by his contract, impliedly agreed that his vessel should proceed without unreasonable delay. This was a condition precedent, as well as an agreement. Now, it does not appear from the evidence whether the delay from the 27th of July, the date of the charter party, until the 1st of November, when the discharge of the cargo was finished, was or was not necessary. The cause of the delay does not clearly appear; and while I cannot say whether or not the delay was unnecessary, I have no hesitation in saying that it was unreasonable, so far as the defendants are concerned. There is no intimation given in the charter party of a necessity for staying at Santos to discharge cargo. The language used clearly implies that there was nothing in the existing engagements of the vessel to prevent her entering on the new contract with promptness. It does not appear that the charterers knew at the time the charter party was effected that the vessel was burdened with a cargo. The stipulation, "at Santos, or sailed," conveys the idea that, if the vessel had not already sailed, she was "at Santos," and would soon sail. One of the conditions implied in the contract was that the ship would commence and carry out the voyage contracted for with reasonable diligence. She did not reach Ship island until more than 6 months after the charter party was signed, and she did not sail from Santos until the expiration of more than $4\frac{1}{2}$ months from that time, and, as was said by Mr. Chief Justice Waite in a case very similar to this, (Antola v. Gill, 7 Fed. Rep. 487,) "this because it took her most of that time to get rid of the obligations of another contract she was under, to deliver a cargo she had on board to consignees at Santos. "In

other words, she was delayed in the performance of her new contract because she was bound by an old one." "By staying at * * * [Santos, in this case] to discharge her cargo, she saved the profits of her old contract, but we think she is not now in a condition to throw the losses of the new one upon her charterers." My opinion is that the vessel did not proceed to Ship island with all convenient speed, within the meaning of the contract, and without unreasonable delay, as implied therein. Therefore the libelant cannot recover, unless the charterers waived the broken conditions of the contract. If, after knowledge of the breach, they received substantial benefit under the contract, they will not be entitled to repudiate it.

The facts, as shown by the proof, are that the defendants have their head office in Mobile. That they have an office and agent at Scranton, the port to which Ship island belongs. This agent was employed and authorized to attend to all general and ordinary matters connected with defendants' business at Scranton. That he had no authority to act in extraordinary matters except by special instructions in the particular instance, and that he had no express authority to waive the breach claimed in this case. The contention is that his general powers as agent, and his recognized conduct in connection with the defendants' business, gave him such authority, and that the acts done by him in connection with this vessel amounted to a waiver of the alleged breach of her contract. While a waiver may be implied from acts, yet, if claimed to have been done by an agent in a common employment in general business, I think that express authority in the agent must be shown. Bennecke v. Insurance Co., 105 U. S. 355; Abb. Shipp. p. 350.

But suppose the agent was authorized to waive the breach, as is contended by the libelant. Were his acts or conduct such as to justify the master in relying upon them, and setting them up as an estoppel? And did the defendants thereby receive any substantial benefit under the charter party? If not, the contention must fail. The acts referred to are that, when the master of the vessel reported his arrival to the agent, he informed the agent that he wanted some money to pay entrance fees, and for his individual use, and that he wished to get the ballast lighter to take his ballast. The agent had no money in hand, and told the master that he would give him a draft on defendants, at Mobile, for $100, if he could use it, and this was done. He also said that he would send the lighter, or request the stevedore to send a lighter, to the vessel, to take her ballast, and this was also done. The agent at the same time told the master that he did not know what would be done with him; that, owing to the long delay in the arrival of the vessel, the charterers had disposed of the cargo which they had for her; and that he would have to see them, to learn what was to be done about it. This was on Saturday. On the following Monday the agent went to Mobile, and reported the facts to the defendants. The lighter that was ordered to go alongside for ballast was recalled. It had reached the vessel, but had taken out no ballast. The master of the ship was requested to go to Mobile to see the defendants relative to the matter, which

he did; and it was then that the defendants refused to load the vessel under the charter party, informing the master that they had disposed of the cargo which they had prepared for his vessel, owing to her delayed arrival, and that at that time they had no other cargo like that mentioned in the charter party. I do not think that the acts of the agent were such as to justify the master in relying on them as a waiver, when coupled with the declaration made by the agent to him, that owing to his long delay the cargo intended for his vessel had been otherwise disposed of; that he did not know what the charterers were going to do about it, and he must learn from them. The proof fails to show that the defendants received any benefit under the charter party. They, through their agent, advanced $100 to the master, but it does not appear that they have received any commissions or interest on it, or, indeed, that the principal has been repaid.

I think the charterers took their objections to the delay within a reasonable time, and that they can avail themselves of the broken conditions of the contract. 1 Pritch. Adm. Dig. p. 489, par. 185. It follows that the libel must be dismissed, and it is so ordered.