### THE HURSTDALE.

(Circuit Court of Appeals, Second Circuit. May 2, 1910.)

No. 207.

SHIPPING (§ 58*)—CHARTER—DEFICIENCY IN SPEED—LIABILITY OF OWNER.

Evidence considered, and *held* insufficient to establish by the decisive proof required to sustain an action for deceit that representations made in a charter party as to the speed of the vessel were not believed by the owner to be true, and therefore not to entitle the charterer to recover damages; the charter party expressly providing that "these particulars are not guaranteed."

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by George L. Duval and others, composing the firm of Wessel, Duval & Co. against the steamship Hurstdale; the Hurstdale Shipping Company, Limited, claimant. Decree for claimant (169 Fed. 912), and libelants appeal. Affirmed.

See, also, 171 Fed. 607.

Henry W. Rudd (Charles C. Burlingham, of counsel), for appellants.

Convers & Kirlin (J. Parker Kirlin and John M. Woolsey, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The charter party contains this clause:

"Owners represent that the steamer under ordinary conditions, and laden, will steam on an average about 8½ knots per hour on about 17 tons of best

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Welsh coal for 24 hours, and that her dead weight capacity for cargo and bunkers is about 5,200 to 5,250 tons. *These particulars are not guaranteed.*"

The italicized words were inserted in typewriting. The residue of the paragraph was in the original printed form, except that the figures were inserted with a pen. Proof showed that on the voyage covered by the charter party the average speed of the Hurstdale was as follows:

New York to Coronel, Chili................................ 7 knots
Coronel up and down coast to Coronel...................... 7  "
Coronel to Montevideo.................................... 6.2 "
Montevideo to Charleston................................. 6.2 "
Charleston to Baltimore.................................. 5.5 "

The libel sets forth a cause of action for deceit, averring that the representation as to speed was material, that it was false and made with the intent that it should be acted on by the execution of the charter, that it was acted on and to libelants' damage, and that in so acting the libelants were ignorant of its falsity and reasonably believed it to be true. Communications passed between the parties prior to the execution of the charter party on April 30, 1906; but the questions which have been discussed as to the admissibility and effect of these communications need not be considered, since their contents are epitomized in the quotation supra.

The theory of the libelants seems to be that, although the italicized words may operate to exclude any undertaking for the Hurstdale's future performance, the statement as to speed should be regarded as a representation of present capacity, which, if false and relied upon, might be the basis of an action for deceit. It is not necessary to discuss the questions raised by the presentation of this theory, because the proofs do not satisfy us that the statement that the "steamer under ordinary conditions, and laden, will steam on an average about 8½ knots per hour on about 17 tons of best Welsh coal for 24 hours" was *not actually believed by the defendant, on reasonable grounds, to be true.* To establish such a cause of action as this there must be clear and decisive proof that defendant did not actually believe his representation to be true. Southern Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678. The steamer had made two prior voyages, one from Leith to Rio, the other from Calcutta to Colombo, at a better average than 8½ knots. For aught that we can see, her owners might reasonably have believed that on the day the charter party was signed the Hurstdale was capable of repeating that performance. The change in her load line, which by increasing her draft retarded her speed, was not authorized under the statute till she was remeasured by Lloyd's surveyor on May 25, 1906, nearly a month after the charter party was signed.

The decree is affirmed.