# CARGILL ELEVATOR COMPANY v. D. SULLIVAN & COMPANY.[1]

June 17, 1927.

No. 26,059.

**Party executing a charter party as principal, even if acting as agent, is liable for its breach.**

1. Defendant, having executed a charter party in which it purported to contract as principal, is liable for a breach of the contract whether in fact contracting as principal or as agent for an undisclosed principal.

**Evidence sustained finding that failure of vessel to report for loading was breach of contract.**

2. The evidence sustains the finding that the contract was breached by the failure of the vessel to report for loading within the time required by the contract; also that the delay was caused by the voluntary act of the owner; also that plaintiff had not waived its claim for damages.

Agency, 2 C. J. p. 818 n. 30.
Shipping, 36 Cyc. p. 77 n. 7 New; p. 119 n. 48.

Action in the district court for St. Louis county to recover for the breach of a charter party. There were findings for the plaintiff, and defendant appealed from an order, Magney, J., denying its motion for a new trial. Affirmed.

*Spencer & Spencer*, for appellant.

*Washburn, Bailey & Mitchell*, for respondent.

TAYLOR, C.

Both plaintiff and defendant are corporations. Plaintiff is engaged in the business of buying and selling grain on the Duluth board of trade and in shipping grain by boat over the Great Lakes. Defendant is engaged in the business of securing vessels for shippers and cargoes for vessels. It owns three vessels, but its business includes securing other vessels for shippers and cargoes for other vessels. The transactions out of which this controversy arose were

[1]Reported in 214 N. W. 510.

conducted on the part of plaintiff by Harley L. Flood and on the part of defendant by Alastair Guthrie. On November 15, 1924, plaintiff informed defendant that it desired to obtain a vessel to carry a cargo of wheat from Duluth to Toledo in the latter part of that month. Negotiations followed which resulted in a contract which was reduced to writing in the following form:

"Charter Confirmation
"D. Sullivan & Company
          "Board of Trade          No. 1054
"To Cargill Commission Company,
     "Duluth.                    Duluth, November 17, 1924.
     "We confirm charter with you today for about 125,000 Ship's option Bushels of Wheat to be moved from Duluth-Superior to Toledo Steamer E. C. Pope.
Due to load November 25th, Rate Four Cents per bushel.
Remarks: To unload at East Side Iron Elevator,
     "Shipper guarantees space ready in elevator on arrival of cargo.

                    "D. Sullivan & Co.
                    "By Alastair Guthrie

"Not responsible for delays
owing to strikes accidents
or other causes beyond our
control."

Defendant represented marine insurance companies and was to insure the cargo as a part of its contract, the insurance attaching automatically as the cargo was loaded. The rate for marine insurance on the Great Lakes during the month of November was thirty cents per $100 of the value of the cargo; the rate for such insurance during the month of December was one dollar per $100 of the value of the cargo. The ship did not arrive to load until December 2 and was loaded on that date. Defendant insured the cargo as required by its contract. Plaintiff refused to pay the premium at the December rate, but the insurance companies brought suit and collected it at that rate. Thereafter plaintiff brought this suit to recover

from defendant the sum of $1,652.27, the amount it had been compelled to pay over and above the amount of the premium at the November rate. The court found the facts as claimed by plaintiff and directed judgment for the amount claimed. Defendant appealed from an order denying a new trial.

1. Defendant claims that it executed the charter party as a broker and not as principal and is not liable upon it. Defendant did not own the E. C. Pope; but contracted with the owner through a vessel agent at Cleveland, Ohio, to carry this cargo, and then executed the charter party in question to plaintiff without informing plaintiff who owned the ship and plaintiff did not know who owned it. The charter party purports on its face to be executed by defendant as principal, and contains nothing to indicate that defendant intended to act in a representative capacity. As said by the learned trial court, defendant contracted either as principal or as agent for an undisclosed principal and is liable for a breach of the contract in either case. Rowell v. Oleson, 32 Minn. 288, 20 N. W. 227; Wm. Lindeke Land Co. v. Levy, 76 Minn. 364, 79 N. W. 314; DeRemer v. Brown, 165 N. Y. 410, 59 N. E. 129; Horan v. Hughes (D. C.) 129 F. 248; Phosphate Min. Co. v. Unione etc. 3 F. (2d) 239.

2. Defendant contends that the failure of the ship to arrive in time to load in November did not constitute a breach of the contract.

The charter party contains the provision, "Due to load November 25th." Defendant's witnesses say, without contradiction, that the expression "due to load" is a trade term having a well known meaning with reference to which such contracts are made. As we understand them, the term means that, taking into account the position and situation of the ship and its prior commitments, it has the ability to and will report for loading at the time specified, unless delayed or prevented by the perils of navigation or other unforeseen casualties. The charter party also contains the provision: "Not responsible for delays owing to strikes accidents or other causes beyond our control." Defendant claims that the delay was caused by storms and gales, and that the contract absolves it from liability for such delays.

When the contract was made the "Pope" was at Buffalo, New York, and was to proceed to Toledo and load with coal for Superior, Wisconsin. It had no other commitments. It proceeded to Toledo and took on the cargo of coal. While there it was directed by the owner to proceed to Harbor Beach on Lake Huron and pick up the barge Mitchfibre and tow it to Fort William, Canada. The "Pope" stopped at Harbor Beach and took the barge loaded with coke in tow. It was delayed there 30 hours. Towing the barge reduced the speed of the "Pope" two miles per hour and going to Fort William took it off its course. On reaching Lake Superior, storms and heavy winds were encountered which made it dangerous to proceed with the barge in tow, and the "Pope" ran under Whitefish Point where it anchored and remained for three days. Other ships of about the same character as the "Pope" which entered Lake Huron at about the same time reached Duluth on November 25 and 26. Other like ships which entered Lake Superior at about the same time as the "Pope" but were not encumbered by a tow arrived at Duluth in ample time to load in November. The captain of the "Pope" says that ordinarily the ship would run from Harbor Beach to Duluth in 78 hours. In fact it arrived at Harbor Beach a little after three o'clock on the morning of November 23 and at Duluth a little before seven o'clock on the morning of December 1.

The evidence amply justified the court in holding that the failure to arrive at Duluth in time to load in November was caused by stopping for this barge and towing it to Fort William, a distance of 470 miles. The contract to tow this barge was voluntarily made after the making of the contract with plaintiff, and the delays resulting from performing it were not such as were excepted by the provisions of plaintiff's contract, and did not excuse the delay of the vessel in reporting to plaintiff for loading, nor absolve defendant from liability for such delay. Antola v. Gill & Fisher (C. C.) 7 F. 487; The B. F. Bruce (C. C.) 50 F. 118; The Progreso (C. C. A.) 50 F. 835; Sanders v. Munson (C. C. A.) 74 F. 649; Hand v. Baynes, 4 Whart. (Pa.) 204, 33 Am. Dec. 54.

3. Defendant further contends that plaintiff has waived its claim for the difference between the November and the December rates. The court found that plaintiff had waived none of its rights.

The complaint alleged and the answer admitted that from November 25 until the close of navigation in December it was impossible for plaintiff to secure any other vessel or any other means for transporting the grain to Toledo at a less cost than the contract rate plus the insurance premiums at the December rate. On November 29 plaintiff wrote defendant that the "Pope" was four days overdue and that,

"We shall hold you liable for any loss or damage to us that may accrue for non-fulfillment of contract."

On the same date defendant answered saying,

"We, as agents, merely represent the owners of this vessel and are forwarding your letter to them."

Plaintiff asserts that this letter is the first information plaintiff had that defendant claimed to have made the contract as an agent and not as principal. On December 1, while the vessel was unloading its cargo of coal, defendant showed plaintiff a telegram to the effect that the owner refused to assume any liability. Defendant's claim of waiver rests upon the conversation which took place when Guthrie exhibited this telegram to Flood. Guthrie says:

"I showed him the wire, and he asked me again regarding our ability, or willingness, to assume the difference in the rates, and I told him that we would not assume the difference ourselves, and that as insurance brokers we had no authority to vary the rates, that if the ship was loaded in December, that the December rate would have to apply, and Mr. Flood said, 'All right; send her over,' and they would load her."

On December 2 plaintiff wrote defendant that the steamer was loaded, and that

"To avoid any misunderstanding we are informing you that our acceptance of this steamer in no way waives any claims of ours for loss or damage sustained by us when this vessel did not report for loading by November 25th as agreed when she was chartered to us."

On the same day defendant replied that,

"The matter of claim for loss or damage can be discussed by you with the owners either direct or through us."

After the ship had sailed plaintiff sent defendant two checks, one for the exact amount of the freight and the other for the amount of the insurance at the November rate. Defendant accepted the check for the freight, but refused the check for the insurance. Thereafter the insurance companies brought suit against plaintiff for the insurance premiums and recovered judgment for the amount at the December rate, which judgment plaintiff paid as previously stated. Under the agreement between defendant and the owner of the vessel, the freight belonged to the owner of the vessel and was apparently paid over to the owner by defendant.

Defendant seems to have taken the position, not that plaintiff had no claim for damages but that defendant was only an agent, and that the claim was against the owner. And it urges here that plaintiff should have deducted its loss from the freight money which belonged to the owner, and not from the insurance premiums which belonged to the insurance companies. But plaintiff's contract was with defendant, and it dealt only with defendant. It never asserted or recognized any contractual relations with the owner, and never had any communication with the owner. Its claim was against defendant and it was under no obligation to assert it against the owner.

It stands admitted that plaintiff could not have lessened its loss by procuring other transportation for its grain at any time after November 25. Defendant had breached its contract by failing to have the vessel report for loading within the time required by the contract, and plaintiff's claim for damages on account of such breach had accrued before the transaction which defendant asserts amounted to a waiver of damages for failure to load in time to secure the November rate. Plaintiff asserts that it never agreed to pay more than the November rate for the insurance. We think that the evidence sustains the finding of the court that plaintiff had waived none of its rights.

Order affirmed.