**DENHOLM SHIPPING CO., Limited, v. W. E. HEDGER CO., Inc.**

**W. E. HEDGER CO., Inc., v. DENHOLM SHIPPING CO., Limited.**

District Court, E. D. New York.  May 8, 1929.

Nos. 7759, 7764.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for Denholm Shipping Co.

Burlingham, Veeder, Masten & Fearey, of New York City, for W. E. Hedger Co.

CAMPBELL, District Judge.  The two above-entitled suits were on stipulation tried together, and, as they arise out of the same transactions, one opinion will be sufficient.

On March 18, 1924, Denholm Shipping Company, Limited, libelant in the first above-entitled suit and respondent in the second above-entitled suit, chartered to W. E. Hedger Company, Inc., respondent in the first above-entitled suit and libelant in the second above-entitled suit, the steamship Beechpark for "five (5) consecutive calendar months, three (3) weeks more or less," at the rate of $1.40 per ton deadweight capacity per month, which was stated at about 8,250 tons.

There are various other provisions in the charter party relating to tonnage, horse power, capacity, etc., but our attention need be directed only to two others:

Paragraph 8, the usual provision "that the captain shall prosecute his voyages with the utmost dispatch," etc.

The added typewritten marginal paragraph 29, reading as follows:

"In addition to the particulars herein given, steamer is described as capable of steaming about 11 knots to 12 knots an hour in good weather and smooth water on a consumption of about 32 to 34 tons best Welsh coal."

The Beechpark was delivered by the owner to the charterer at Norfolk, on April 14, 1924, and was redelivered by the charterer to the owner at Rotterdam, at 2 a. m. on October 8, 1924, charter hire having been paid only to July 14, 1924.

In the first above-entitled suit the owner of the Beechpark seeks to recover for an alleged balance of hire, and for certain disbursements made by the owner for account of the charterer.

In the second above-entitled suit the charterer of the steamship Beechpark seeks to recover for alleged breach of the charter with respect to paragraphs Nos. 8 and 29, and for deviation and loss of freight.

In the answer of W. E. Hedger Company, Inc., to the first above-entitled suit, a claim is made of misrepresentation on the part of Denholm Shipping Company, Limited.

On the trial the claim of misrepresentation contained in its answer to the first above-entitled action was withdrawn by W. E. Hedger Company, Inc., as were the claims of deviation and loss of freight contained in its libel in the second above-entitled suit.

The steamship Beechpark was built in 1919, is 400 feet long, 52 feet beam, has a deadweight capacity of 8,250 tons, and was equipped with four cargo hatches and a reserve bunker hatch, which was sometimes used for cargo, and at the time she was delivered by the owner to the charterers she was in perfect condition, having been overhauled at Hamburg a few weeks previously, and her bottom was clean. She was classified A-1 at Lloyds, and her hull, engines, and boilers were in A-1 condition.

The provision of paragraph 8 of the charter, "that the captain shall prosecute his voyages with the utmost dispatch," does not mean that he was bound to proceed at a speed of 11 or 12 knots an hour, even if it was held that paragraph 29 was a warranty that the ship would make that speed, and it is not so held.

A provision that the vessel should proceed "with all convenient speed" was said to be the equivalent of the stipulation that she would proceed without unnecessary delay. Olsen v. Hunter-Benn & Co. (D. C.) 54 F. 530.

A provision that the ship should "proceed from Melbourne to Calcutta with all possible dispatch" was said to mean merely that she should proceed directly from one place to another. Lowber v. Bangs, 69 U. S. (2 Wall.) 728, 738, 17 L. Ed. 768.

A provision that the ship would "proceed without delay to Baltimore" was held not to be complied with, where the vessel remained at Genoa for 31 days discharging cargo. The implication seeming to be that the stipulation meant only unusual or unnecessary delays. Antole v. Gill (D. C.) 5 F. 128, affirmed (C. C.) 7 F. 487.

An agreement to make rifles "with all possible dispatch" held merely to require that the rifles should be produced within a reasonable time. Rowan v. Sharp's Rifle Manufacturing Co., 33 Conn. 1, 23.

The master has full discretion with respect to the navigation of his ship. The Lusitania (D. C.) 251 F. 715, 728; The Smith Terry No. 1 (D. C.) 34 F.(2d) 572, 1923 A. M. C. 446.

Not only is there no evidence that the master abused his discretion, but it appears affirmatively that neither the charterer nor the supercargo complained during the charter period that the master of the Beechpark did not prosecute his voyages with all sufficient dispatch. The ship proceeded at an economical cruising speed, which was to the benefit of the charterer, who was paying for the coal.

That in thus proceeding the engineer was acting in a normal and usual manner appears from the testimony of the witness Aitkin, called by the W. E. Hedger Company, Inc., and was doing the best possible for both charterer and owner, with the character of fuel provided by the charterer.

The master proceeded directly to the ports named by the charterer, and all delays were caused by the failure of the charterer to make arrangements for quick dispatch. Paragraph No. 8, read alone or in conjunction with paragraph No. 29, furnishes no ground for relief for the charterer.

This leaves for consideration only paragraph No. 29, reading as follows:

"In addition to the particulars herein given, the steamer is described as capable of steaming about 11 knots to 12 knots an hour in good weather and smooth water on a consumption of about 32 to 34 tons best Welsh coal."

This paragraph is perfectly clear and unambiguous. It is a representation of what the ship was capable of doing under given circumstances, but not under any and all cir-

cumstances. It was not a warranty, but a representation, which may have induced the charterer to enter into the charter party, and, if it was not true, the charterer might maintain a suit for deceit. If, however, the steamship, under the conditions cited, had prior to the making of the charter made such speed, the owners were justified in believing that the vessel could, under the conditions stated, make the speed, and there were no misrepresentations. The Hurstdale (D. C.) 169 F. 912, affirmed (C. C. A.) 179 F. 371; The Burma (C. C. A.) 187 F. 94.

On behalf of W. E. Hedger Company, Inc., the defense of misrepresentation was withdrawn.

■ W. E. Hedger Company, Inc., however, while admitting that they could not vary the terms of the charter party by such evidence, attempted to introduce in evidence letters and cablegrams exchanged between the parties before the charter party was made, to explain the meaning of such paragraph as something different than appears on the face of it. Objections to the evidence offered along that line were sustained, and I assumed the matter was settled so far as this court was concerned; but, as the advocates have argued this question in their briefs, I have read the cases cited on behalf of W. E. Hedger Company, Inc., and find they are not in point.

In United States v. Bethlehem Steel Co., 205 U. S. 105, 27 S. Ct. 450, 455, 51 L. Ed. 731, letters exchanged between parties prior to the final execution of the contract were admitted in evidence because the language of the contract was "not wholly free from doubt."

In Sun Printing & Publishing Ass'n v. Edwards (C. C. A.) 113 F. 445, prior conversations and negotiations between the parties were admitted only because the plaintiff himself had introduced evidence as to the conversations, and thus opened the door.

Section 135 of the Seventh edition of Carver on Carriage by Sea discussed the circumstances under which a representation contained in a document amounts to a warranty.

In Hassan v. Runciman, [1904] 10 Com. Cas. 19, the charterers relied upon a representation of the owners' brokers, in the course of negotiations, that the vessel had carried a certain amount of cargo and entered into a written charter party, which contained no reference to the previous cargo. On the failure of the vessel to carry the amount which the owners' representative had indicated it had carried, the charterers sued for a breach of warranty, but not on the charter. The

court held that there was a warranty, that was broken.

■ On behalf of W. E. Hedger Company, Inc., it seems to be urged that the Beechpark, under the terms of paragraph 29, should be able to make an average of 11 to 12 knots without regard to the conditions named; but this would not be true, even if paragraph 29 was held to be a warranty, because it plainly appears from paragraph 29, whether it be a representation or a warranty, that the speed mentioned has been or is to be made only under the conditions as to weather and sea therein mentioned, and on a consumption of coal based on the standard therein specified.

The speed in such paragraph mentioned, under the conditions as to weather, sea, and fuel therein mentioned, had been made by the Beechpark before the making of the charter party, and no test under the conditions mentioned was made while the Beechpark was on charter to W. E. Hedger Company, Inc., and there is no evidence to show that she could not have done so; therefore, even if paragraph 29 was held to be a warranty, no proof of a breach thereof was shown.

I see no reason to doubt the accuracy of the logs of the Beechpark, nor do I believe that Capt. Morgan, the supercargo, was denied access to them while on the voyage, or that his record of the weather encountered on the voyage should be accepted as contradicting the logs.

The duty of providing coal rested upon the charterer, and at no time did it furnish best Welsh coal, and, even considering the table of equivalents of various other coals, it is apparent that there was a wide difference between the standard of best Welsh coal and that furnished by the charterer; and still, though no order for a test was given, and no complaints of the speed of the vessel made by the charterer or supercargo during the period of the charter, the Beechpark did on occasions during the charter period make over 11 knots on a consumption of coal the equivalent of less than 34 tons of best Welsh coal. If the logs are believed, there is no question that the Beechpark had made the speed specified, and this was admitted by the witness Johnson, called on behalf of W. E. Hedger Company, Inc.

It is unnecessary to discuss at length the testimony of all the witnesses as to engine movements, slip, linking in, and the various characters of coal supplied, because I have found by my examination of the testimony that the Beechpark, under the conditions

stated in paragraph 29, was capable of making 11 to 12 knots an hour, and therefore there was no breach of the charter party. This is admitted by the witness Johnson, called on behalf of W. E. Hedger Company, Inc., who said: "I have not said she could not fulfill the conditions, but she did not on this particular charter party."

The following cases cited on behalf of W. E. Hedger Company, Inc., are not in point:

In Astraea (D. C.) 124 F. 83, and The Ceres (D. C.) 61 F. 701, affirmed (C. C. A.) 72 F. 936, certiorari denied, 163 U. S. 706, 16 S. Ct. 1199, 41 L. Ed. 319, there were charter undertakings as to speed.

In Falls of Keltie S. S. Co. v. United States & A. S. S. Co. (D. C.) 108 F. 416, 417, there was a charter undertaking, "steamer is to be docked, bottom cleaned and painted whenever charterers and master think necessary, at least once in every six months."

A decree may be entered in the first above-entitled suit in favor of the libelant, Denholm Shipping Company, Limited, against the respondent, W. E. Hedger Company, Inc., with costs and the usual order of reference.

A decree may be entered in the second above-entitled suit in favor of the respondent, Denholm Shipping Company, Limited, against the libelant, W. E. Hedger Company, Inc., dismissing the libel, with costs.