410

## EASTERN BRASS & COPPER CO., Inc. v. GENERAL ELECTRIC SUPPLY CORP.

United States District Court,
S. D. New York.

Nov. 30, 1951.

Jesse L. Goldberg, New York City, for plaintiff.

White & Case, New York City, Lowell Wadmond and Edward J. Kenn, New York City, of counsel, for defendant.

DIMOCK, District Judge.

Plaintiff sues to recover damages for delay in delivery of electrical equipment sold and delivered by defendant. Defendant counterclaims for the agreed price of the equipment. Defendant makes this motion for summary judgment dismissing the complaint and granting recovery on the counterclaims.

The delivery of the goods and the amount of the agreed price are conceded so that there is no opposition to the counterclaims.

The suit presents the following questions: (1) at what time did the agreement require delivery; (2) was delivery made within that time; (3) if delivery was not made within the time fixed therefor did an exculpatory clause in the agreement protect the seller against recovery of damages for the delay?

I have come to the conclusion that there exists a question of fact as to whether delivery was made within the time required by the contract. Such a question of fact ought not to be determined on a motion for summary judgment. If such an exculpatory clause were all embracing, however, it would be unnecessary to decide whether delivery was made on time and summary judgment might be directed against the plaintiff on its claim for damages on the strength of the exculpatory clause alone. I have come to the further conclusion that the exculpatory clause in this case is not all embracing and I must, therefore, deny the motion for summary judgment dismissing the plaintiff's claim for damages.

My reasons for these conclusions follow.

In the presentation of the motion most emphasis was laid upon the question whether an alleged oral guarantee fixing the time of delivery was part of the contract between the parties.

The contract was not integrated in a single formal writing. Under date of April 10, 1946, defendant gave the plaintiff its quotation Number 3926 covering four 10-horse power electric motors, four starters for them and four push button stations.

Under the same date the defendant gave the plaintiff its quotation Number 3905 covering two 3-horse power motors, two starters for them, two 5-horse power motors and two starters for them.

Quotation Number 3926 covering the larger motors bore the notation, "Shipping promise after receipt of order at factory" and quotation Number 3905 covering the smaller equipment bore the notation, "Shipment: 36 weeks".

Each quotation bore an endorsement stating: "All orders are subject to the acceptance of our district or branch office serving the purchaser."

It was after these quotations were made and before any order was given that the oral statement is alleged to have been made. There is testimony that a representative of defendant guaranteed that the material would be delivered between July 25, 1946 and November 8, 1946.

Under date of April 15, 1946, plaintiff ordered from defendant by purchase order Number A–4961 all of the material covered by quotation Number 3926, at the prices which had been quoted, and in addition a reversing starter and push button station which did not appear on the quotation and for which no prices were stated in the order.

Under the same date, plaintiff ordered from defendant by purchase Number A–4963 all of the material covered by the quotation Number 3905, at the prices which had been quoted, and four push button stations which did not appear on the quotation and for which no prices were stated in the order.

Order Number A–4961 for the larger equipment referred to "Your quotation No. 3926" and order Number A–4963 for the smaller equipment referred to "Your quotation No. 3905". Neither fixed any date of delivery and each contained the request: "Please * * * acknowledge receipt of order stating date of delivery".

The steps by which the contract was formed were the submission of the quotations by defendant, the submission by plaintiff of orders which refer to those quotations and the final acceptance of the orders by defendant. The date when the orders were finally accepted does not appear with precision in the papers but they must have

been accepted at least as early as January 13, 1947, on which date defendant wrote plaintiff a letter expressing regret that the material could not be delivered until the latter part of March, 1947.

The material was not all delivered until long after November 8, 1946, the final date fixed in the alleged oral promise.

■ Whether or not the quotations and the orders embodied the entire agreement between the parties it is unnecessary to decide. It is clear, however, that the quotations in the orders embodied the entire agreement of the parties on the subject of the date of delivery of the material and damages for any delay in such delivery. The orders by referring to the quotations embodied in the terms of the orders all of the provisions in the quotations. As was said by Judge Woodruff in Beach v. Raritan & Delaware Bay R. R. Co., 37 N.Y. 457, 464: "* * * where a proposition on one side is submitted, whether verbal or written, calling for an answer based on such proposal, the answer, though in writing, need not necessarily recite all the terms and conditions embodied in the proposal. It is to be read in connection with the proposal to which it is a reply, and the whole together constitutes the contract between the parties."

The fact that there were a few items ordered that did not appear on the quotations merits some notice. When plaintiff indicated on the face of the orders that the orders referred to the designated quotations, defendant was entitled to assume that the general terms of the quotations would be applicable to the whole order whether or not any particular item which was being ordered had been quoted.

To determine the provisions of the contract as to delivery dates I must look to the written terms of the quotations and orders and to those only. The alleged guarantee fixing November 8, 1946 as the latest date for delivery is in direct contradistinction of the terms of the quotations and the orders since the quotation for the larger equipment provided, "Shipping promise after receipt of order at factory" and the quotation for the smaller equipment provided, "Shipment: 36 weeks". In the latter

case the 36 weeks from the date of the quotation would have run out in the middle of January, 1947.

The next question is whether there was a breach of the provisions of the agreement as to date of delivery. The chronology is that the orders were dated April 15, 1946 and were accepted at least as early as January 13, 1947 and that the last of the equipment was not delivered until November 18, 1947.

Following the signature on each of the quotation forms there appear in large type the words: "See reverse side for standard conditions applying." On the reverse side under the heading "Standard conditions applying to all transactions" appears, among others, the following provision: "Shipping dates given in advance of actual shipment are estimated, and deliveries will be made subject to prior orders on file with us; we shall not be liable for delays resulting from causes beyond our reasonable control or caused by fire, labor difficulties, or delays in our usual sources of supply. Shipping dates are subject to delays resulting from preference ratings or priority shipments ordered or requested by the United States Government or by any department, commission, or agent thereof, and the Corporation shall not be liable for any such delays."

■ Taking all of these provisions together it cannot be said that the seller put the purchaser at its mercy with respect to delays in deliveries. Even though the purchaser was warned that the shipping dates were estimated, the seller cannot be heard to say that when it accepted the purchaser's order it was merely going through idle gestures. By the quoted provisions the seller did not eliminate the promise implied in all contracts that performance will be made within a reasonable time. N.Y. Personal Property Law, McKinney's Consol. Laws, c. 41, § 124, subd. 2. Nor was that implied promise eliminated in the case of the larger equipment when the seller said that the shipping promise would be made after the receipt of the order at the factory, and it certainly was not eliminated in the case of the smaller equipment when the seller fixed a definite period of 36 weeks. Thus some

time would eventually arrive when further delay in shipment would have been unreasonable. Whether or not that time had arrived in this case is a question of fact that cannot be determined summarily.

The quotations which were incorporated by reference in the orders did, however, contain an exculpatory clause with respect to damages so that defendant might be entitled to summary judgment dismissing plaintiff's claim even though in the ordinary case plaintiff would be entitled to go to trial on question of breach of contract by delay in deliveries. The exculpatory clause must, therefore, be examined to see whether by it plaintiff has given up any right to recover the damages which it seeks under its complaint.

Besides the exemption of liability for delays due to enumerated specific causes provided for in the part of the indorsement on the quotations above quoted, the indorsement contains the following disclaimer: "We shall not, under any circumstances be liable for special or consequential damages on account of delay in furnishing merchandise contracted for or on account of the use or resale of such merchandise."

That clause raises a question whether the damages sought under the plaintiff's complaint are "special or consequential damages".

■■ Those words are obviously used in contradistinction to "general or direct damages" so that the problem is to draw the line between those two classes of damages. If plaintiff seeks any damages which are not special or consequential it cannot be said that the exculpatory clause is a complete bar to plaintiff's claim.

Plaintiff's allegation of damages reads: "That by reason of the failure and refusal of the defendant to complete its deliveries in accordance with its representation, upon which the plaintiff herein relied, the plaintiff was damaged in that it suffered partial shutdown of the plant over a period of time, was compelled to purchase and install temporary machinery and equipment, thereby substantially reducing production

and efficiency of production, incurred double installation costs, together with other items of damages incidental thereto, * * *."

■ These damages are all special or consequential with the possible exception of those described in the phrase "together with other items of damages incidental thereto". Construing, as one must, the complaint most favorably to the plaintiff, that constitutes an allegation of "other" items of damages incidental to the failure and refusal of the defendant to complete its deliveries. Thus if, under the facts of this case, plaintiff incurred damages which were not special or consequential the exculpatory clause would not be a complete bar. It remains to be considered whether a purchaser who, like this plaintiff, meets delay in supply of materials and finally accepts them, suffers anything but the special or consequential damages arising out of such things as the shutdown of its plant, the purchase and installation of temporary machinery, the reduction in production and efficiency, and the double installation costs incident to the absence of the required equipment.

It seldom becomes necessary to distinguish in such a case between general or direct damages on the one hand and special or consequential damages on the other. In the case of Otis Elevator Co. v. Standard Construction Co., 92 F.Supp. 603, 606, however, the United States District Court for the District of Minnesota, had occasion to determine the effect of an exculpatory clause similar to that here involved. The words in that case were: "we shall not be liable for consequential damages". Chief Judge Nordbye on pages 607–608 of 92 F.Supp. distinguishes between the loss of use of the equipment which is to be supplied and the loss of use of that in which the equipment was to be incorporated. In the former case the damage resulting from the loss of use is direct while in the latter it is consequential. This results from the fact that the normal damage that is the inevitable concomitant of delay in the delivery of equipment is the value of the use of the equipment for the

414

period of the delay. The person who is deprived of the use of the equipment may suffer other damages as a result of the delay but they are consequential arising from interposition of some factor other than the mere delay in delivery. In the Otis Elevator case there was no allegation of any damage other than the consequential damages arising out of the delay in deliveries. Here, however, plaintiff has included an allegation in its complaint under which general and direct damages may be proved. Thus the exculpatory clause is no bar to the recovery of such general and direct damages. As appears from the discussion in the Otis Elevator case the rental value of the delayed equipment is not consequential damage. Nor is it special damage, whatever may be the precise bounds of the respective fields of the words "special" and "consequential" as used in the quotation forms. Plaintiff is, therefore, still at liberty to prove and recover the rental value of the equipment for any period between the time when it should have been delivered under the terms of the contract and the time of its actual delivery.

The motion for summary judgment dismissing the complaint will be denied and the motion for summary judgment in favor of defendant on its counterclaims will be granted.

Nothing that has been said is intended to prevent defendant on the trial of the action from proving facts which would bring into operation the clause: "We shall not be liable for delays resulting from causes beyond our reasonable control or caused by fire, labor difficulties or delays in our usual sources of supply" or the clause which disclaims liability for "delays resulting from preference ratings or priority shipments ordered or requested by the United States Government or by any department, commission, or agent thereof." No facts were alleged in support of the motion for summary judgment which would bring those clauses into play.

Settle order on notice.