JULIUS FROHREICH *vs.* ELIJAH H. GAMMON and another.

December 19, 1881.

**Oral followed by Written Warranty—Action on Former.**—This is an action for breach of a warranty, alleged to have been made by defendants upon the sale of a Marsh harvester to plaintiff. Defendants insisted that the warranty was in writing; plaintiff, that it was oral. Plaintiff claimed and introduced evidence to show that, after the making of the oral warranty, defendants' agent handed him a paper, which defendants contend was the only warranty; that he (plaintiff) could not read it, (as it was written in a language foreign to him,) but that the agent told him that it was the same as the oral warranty, and that this was not true. *Held*, that if the facts are as thus claimed by plaintiff, it is competent for him to show them, and thereupon to maintain his action for the breach of the oral warranty.

**Damages for Breach of Contract—General Rule.**—The damages which one party to a contract ought to recover, in respect of a breach of it by the other, are such as either arise naturally—that is, in the usual course of

things—from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as a probable result of the breach.

**General and Special Damages for Breach of Warranty—Pleading and Evidence.**—Under the first branch of the rule, the damages, in case of a sale and warranty of a harvester, are the difference between the value of the harvester as it was, and its value if it had been as warranted. In order to charge the seller with the loss of the buyer's crops, under the second branch of the rule, the warranty must have been made in such circumstances and upon such a state of facts that it may reasonably be supposed to have been contemplated by the parties, when making the contract, that, if the warranty was not true, the loss would probably follow in consequence of its falsity. If such circumstances and state of facts are relied upon, they must be pleaded and proved.

**Same—Damages not limited to Purchase Price.**—The fact that the buyer of a warranted article gives his note for it, which has not been paid when he brings his action upon the warranty, does not affect the extent of his damage. Neither is the sum which the buyer is entitled to recover for breach of warranty limited by the price which he paid or agreed to pay for the article warranted.

Plaintiff brought this action in the district court for Mower county, stating his cause of action in his complaint as follows:

"That on or about the 20th of July A. D. 1878, at said county, defendants, by their duly authorized agent, sold and delivered to the plaintiff one Marsh harvester for the agreed price of $315, which sum plaintiff then agreed to pay therefor. That at the time of and previous to said sale, defendants represented and warranted said machine to be well made of good material, and that it would do good work—as good as any other machine. That plaintiff believed and relied on said warranty, and the same was the only inducement for plaintiff to purchase said machine. That said representations and warranty were false and untrue; that said harvester was not well made of good material, and would not do good work, and was of no value whatever for the purpose of cutting grain.

"That by reason of the failure of said machine to do good work, plaintiff has been greatly hindered and damaged in his farm work; has been put to great trouble and expense and loss of time in fruit-

less efforts to operate said machine; that his grain, by delay in cut-ting, was, during the year 1878, greatly damaged, and much of it lost.

"That plaintiff has sustained damage in the premises in the sum of $450, for which he demands judgment, with costs and disburse-ments of this action."

The defendants in their answer admitted the sale and delivery of the harvester, denied the making and the falsity of the representa-tions alleged in the complaint; averred that any failure of the har-vester to do good work was owing not to any fault or defect therein, but solely to the ignorance and inexperience of plaintiff, and his inability to manage the machine; denied that plaintiff had suffered any damage by reason of the failure of the machine to do good work; and averred that at the time of the sale and delivery of the har-vester, the defendants, by their agent who made the sale, gave to the plaintiff a written warranty, signed by them, which contained all the representations and inducements held out by defendants to plaintiff to purchase the harvester, and that plaintiff bought the harvester and agreed to pay for it, relying solely and entirely on this warranty, which is as follows:

"*Warranty and agreement.* That it is well made of good material, and with proper management it is capable of doing good work. That the purchaser shall have one day to give it a fair trial, and, if it should not work well, written notice, stating wherein it fails, is to be given to the agent from whom it is received, and Gammon & Deer-ing, Chicago, Ill., and reasonable time allowed to get it, and remedy the defects, if any, (the purchaser rendering necessary and friendly assistance,) when, if it cannot be made to do good work, it shall be returned to the place where received, free of charge, and the notes and money refunded. Continued possession of the machine shall be evidence of satisfaction."

At the trial, before *Farmer*, J., it appeared that the plaintiff on July 20, 1878, applied to one D. B. Smith, defendants' agent, at his office in Austin, Mower county, to purchase a harvester with a binder attached. Smith took him into the yard adjoining the office, where plaintiff saw a machine which had been put together and was stand-

ing in the yard, and the machine in question (which was boxed and not open to inspection) was thereupon loaded on plaintiff's wagon. They then went into the agent's office, where the plaintiff signed three notes for the price of the machine, and the agent gave him the written warranty above set forth. There was a conflict of evidence as to whether the purchase by plaintiff was completed in the yard and before the return to the office, and as to the representations made by the agent, and as to whether the agent read and explained the warranty to the plaintiff, who was not well versed in the English language, and also as to the quality and value of the machine, and its capacity to do good work. The plaintiff failed to show that he had complied with the conditions of the written warranty, or that he had paid any part of the notes given for the price. Under defendants' objection and exception the plaintiff was permitted to introduce evidence tending to prove damage to his crops by reason of the failure of the machine to do good work. The court refused defendants' requests to instruct the jury that the plaintiff cannot recover any special damages, for loss of his wheat or loss of his time; and cannot recover any damages other than the special damages he may have proved, because there is no evidence that he has paid any part of the price of the machine, the giving of notes not constituting a payment, in the absence of any agreement to that effect; to which refusals the defendants duly excepted. The jury returned a verdict of $400 for plaintiff; a new trial was refused, and the defendants appealed.

*E. G. Rogers* and *Rush B. Wheeler*, for appellants, argued among other points that the action will not lie for general damages until plaintiff has first shown that he has paid for the machine. *Aultman* v. *Jett*, 42 Wis. 488; *Aultman & Taylor Co.* v. *Hetherington*, Id. 622; and that the plaintiff cannot recover special damages, because not properly pleaded.

*Sherman Page*, for respondent.

The items of special damage are distinctly and separately stated, and similar averments of special damages have been held sufficient. 2 Greenl. Ev. §§ 254, 256; *Harrington* v. *St. Paul & S. C. R. Co.*, 17 Minn. 215; *Allis* v. *Day*, 14 Minn. 516; *Bast* v. *Leonard*, 15 Minn.

304; *Lindholm* v. *City of St. Paul,* 19 Minn. 245. Plaintiff was entitled to recover all the damage of which the breach of the contract of warranty was the efficient cause. *Marsh* v. *Webber,* 16 Minn. 418; *Sherrod* v. *Langdon,* 21 Iowa, 518; *Passinger* v. *Thorburn,* 34 N. Y. 634; *Milburn* v. *Belloni,* 39 N. Y. 53.

This action can be maintained, and the full amount of damages, both general and special, recovered, whether the purchase price has been paid or not. *Mandel* v. *Buttles,* 21 Minn. 391; *Douglass Axe Manuf'g Co.* v. *Gardner,* 10 Cush. 88; *Vincent* v. *Leland,* 100 Mass. 432; *Parks* v. *Morris Axe & Tool Co.,* 54 N. Y. 586; *Houghton* v. *Carpenter,* 40 Vt. 588; *Mondel* v. *Steel,* 8 Mees. & W. 858; *Geiser Threshing Machine Co.* v. *Farmer,* 27 Minn. 428.

BERRY, J. This is an action for breach of a warranty alleged to have been made by defendants upon the sale of a Marsh harvester to the plaintiff.

1. The defendants alleged and insisted that the warranty was written; the plaintiff, that it was oral. Plaintiff claimed and introduced evidence to show that, after the making of the oral warranty, defendants' agent handed him a paper, which defendants contend was the only warranty; that the plaintiff could not read it, (as it was written in a language foreign to him,) but that the agent told him that it was the same as the oral warranty, and that this was not true. If the facts are as thus claimed by the plaintiff, it is certainly competent for him to show them, and thereupon to maintain an action for a breach of the oral warranty. If he is right, the written warranty is not the contract which the defendants, in fact, entered into. It is a simulated, not a genuine, repository of the agreement of the parties. The plaintiff's apparent acceptance, when the deception practised upon him is shown, goes for nothing. The holding of the court below to this effect was right.

2. In actions of this kind, the measure of damages is the difference between the value of the thing warranted, as it in fact was, and its value as it would have been if it had been as warranted. 2 Greenl. Ev. § 262; Field on Damages, § 285; Sedgwick on Damages, (291.) Where the warranty is fraudulent, as in *Marsh* v. *Webber,* 16 Minn. 418, (cited by respondent,) the damages recoverable may exceed this

measure, and so there may be special circumstances attending a sale and warranty which will make a different measure proper and necessary in order to fairly compensate the party injured by the breach for his loss resulting therefrom. The rule laid down in *Hadley* v. *Baxendale,* 9 Exch. 341, now generally accepted as correct, and sanctioned by this court in *Paine* v. *Sherwood,* 21 Minn. 225, is that the damages which one party to a contract ought to receive, in respect of a breach of it by the other, are such as either arise naturally —that is, in the usual course of things—from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach. Under the first branch of this rule fall the damages arising from the fact that a thing sold and warranted is of less value than it would have been if the warranty were true. These damages arise, in the usual course of things, *from the breach itself;* that is to say, from the breach purely, and irrespective of consequential damages. Their measure is the difference in values before indicated. An instance falling under the second branch of the rule is where one sells and warrants a thing for a particular use, upon reasonable ground for believing that, if put to such use, a certain loss to the buyer will be the probable result if the warranty is untrue. In such circumstances the seller is, under the warranty, chargeable with the loss, as one which may reasonably be supposed to have been in the contemplation of the parties when making the contract. The case where one sold and warranted a ship's cable, to be used for holding an anchor, and, in consequence of defects in it, (warranted against,) the buyer lost the anchor attached to it, and the seller was charged with the loss, falls within the second branch of the rule. *Borradaile* v. *Brunton,* 8 Taunt. 535. So do the cases in which seed having been sold for planting, and warranted to be of a certain kind or quality, and turning out, after being sown, to be of a different kind or quality, the vendor was held liable for the loss of the crop, or the difference in values between the kind or quality grown and the kind or quality promised by the warranty, or for the loss of the use of the land upon which the seed sold was sown, according to the circumstances of the

particular case. *Passinger* v. *Thorburn*, 34 N. Y. 634; *Page* v. *Pavey*, 8 Carr. & P. 769; *Randall* v. *Raper*, El., Bl. & El. 84.

In case of the sale and warranty of a harvester, in order to charge the seller with the loss of the buyer's crops, under the second branch of the rule, as illustrated by these examples, the warranty must have been made in such circumstances and upon such a state of facts that it may reasonably be supposed to have been contemplated by the parties, when making the contract, that if the warranty was not true the loss would probably follow in consequence of its falsity. But, to follow in consequence of the falsity of the warranty, the loss must be one which could not have been prevented by the exercise of reasonable diligence on the buyer's part to save his crop. If such reasonable diligence were wanting, the loss of the crop would be attributable to its want, and not to the falsity of the warranty. Where, if the harvester failed to work as warranted, it would be impracticable for the buyer to save his crop by the use of reasonable diligence in procuring another machine or otherwise, and this impracticability was understood between the parties at the time of the warranty, the case might properly fall within the second branch of the rule. The loss of the crop might well be considered as a probable result of the breach of warranty, which it is reasonable to suppose the parties had in contemplation when the warranty was made. Unless the impracticability spoken of exists, and is so understood, we do not conceive of any case in which the vendor could be charged for the loss of the buyer's crop unless, of course, the vendor made an express warranty against such loss. If such impracticability and understanding are relied upon, they must be pleaded and established. But, so far as appears, there is nothing to take the case at bar out of the general rule.

The action is the ordinary one for breach of warranty, no fraud being set up and no special circumstances being alleged or shown to charge the plaintiff with any greater damages than the general rule allows. It follows that, in its rulings upon the admission of evidence (against defendants' objection) introduced for the purpose of showing the loss of plaintiff's crop, and other special damage resulting, as

was claimed, from the falsity of the warranty, the court below erred. So, also, in those portions of the charge by which the jury were instructed that they might allow plaintiff for such special damage arising from loss of crop, and otherwise.

3. The plaintiff gave his three promissory notes for the harvester, none of which appear to have been paid in full at any rate. But this fact did not affect the extent of plaintiff's damages. He was still entitled to recover the difference between the value of the harvester as it was and as it was warranted to be, and the trial court was correct in so ruling. The notes, if due, could of course be set up by way of counter-claim, and, if not due, if may be that if the plaintiff were insolvent they could be interposed in some way so as to protect the defendants from the injustice of being compelled to make good their warranty, without having received or being able to recover the price of the thing warranted. There are no facts apparent in this case, however, which make these qualifications of the plaintiff's right to recover of any present practical importance. Again, the trial court was right in holding that the amount which plaintiff is entitled to recover for the breach of warranty is not limited by the price which he paid or agreed to pay for the harvester. Whether he paid or agreed to pay one price or another, he is still entitled to recover the difference in values before indicated. 2 Greenl. Ev. § 261; Field on Damages, §§ 281, 283; Sedgwick on Damages, (287,) *et seq.*

4. The plaintiff, in his complaint, alleges that defendants warranted the machine to be well made, of good material, "and that it would do good work—as good as any other machine." This is a warranty that it would do good work, and that it would do as good work as any other machine. If the plaintiff had offered any evidence upon the latter clause of the warranty, it would have been competent for the defendants to have contradicted it. But as plaintiff offered none, defendants' offer to show that other machines worked no better than the harvester sold plaintiff, was properly rejected. It would seem, too, that no evidence on this branch of the warranty offered on behalf of defendants would, in any event, be competent, except such as tended to show that certain kinds of machines, which evidence introduced

by plaintiff tended to show would work better than this harvester, would not so work better in fact.

5. In answer to the claim of the plaintiff (if any there was) that there was some fault in the design and plan of the Marsh harvester sold him which prevented it from doing good work, we think it was competent for the defendant to show that other Marsh harvesters, substantially like it, did perform good work. If the trial court took a different view, (as we understand the defendants to contend,) it was wrong.

This disposes of all the points which we deem it our duty to consider specifically, and the result is that the order denying a new trial is reversed, and a new trial directed.