LILJENGREN FURNITURE & LUMBER COMPANY *vs.* NELLIE B. MEAD.

January 29, 1890.

**Contract for Building Material—Delay in Delivery—Damages—Loss of Rents.**—In case of a contract to furnish and deliver the sash and window and door frames for a building in process of construction, to charge the seller with loss of rents of the building by reason of delay in its completion, caused by his failure to furnish the articles at the time agreed, the contract must have been made in such circumstances and upon such a state of facts that it may reasonably be supposed to have been contemplated by the parties, when making the contract, that such loss would probably follow its breach, and hence that the seller consented to become liable for it.

**Same—Pleading and Proof.**—And such facts and circumstances, if relied upon, must be pleaded and proved. Following *Frohreich* v. *Gammon*, 28 Minn. 476.

*Same—Time of Performance not Specified—Parol Evidence.*—Where a contract is silent as to the time of performance, the law implies that it is to be performed in a reasonable time; and, if it be in writing, evidence of a contemporaneous oral agreement is inadmissible to vary the construction to be thus legally implied from the writing itself.

Action in the municipal court of Minneapolis to recover $198.50 as the "agreed price and fair and reasonable value" of window and door frames and window-sash sold and delivered to defendant. Defence that the goods delivered were furnished under an entire contract for use in a building in course of erection, which contract plaintiff has not fully performed, and counterclaim for damages for non-performance. Plaintiff appeals from an order refusing a new trial, after trial by the court, and judgment for $101.50 ordered for defendant on her counterclaim.

*Edson S. Gaylord* and *Charles G. Van Wert,* for appellant.

*Ferguson & Kneeland,* for respondent.

MITCHELL, J. The principal question raised by this appeal is whether defendant's answer states facts sufficient to constitute a counterclaim for loss of rents of her building by reason of delay in its completion, caused by plaintiff's alleged failure to furnish the outside window and door frames and sash at the time it had contracted. The action is for wares and merchandise, (these frames and sash,) sold and delivered to defendant at her request. The allegations of the answer, so far as here material, are that the plaintiff entered into a contract with defendant, by which it agreed to furnish and deliver to her at her building, then in process of erection in Minneapolis, these frames and sash, to be used in its construction, as fast as they should be needed in the regular course of construction of the building; that plaintiff has failed to furnish and deliver the same as fast as needed in such construction; that some of them still remain unfurnished, although all thereof were long since needed in the course of such construction, and have often and repeatedly been demanded by defendant; that, by reason of such failure, defendant has been greatly damaged by loss of rents of said building, which, but for such failure on plaintiff's part, would have been long since completed and rented to tenants, and yielding rents

to defendant,—all to her damage in the sum of $300. This does not state facts entitling defendant to any such damages for plaintiff's alleged breach of its contract. The loss of rents are not such direct, necessary, and natural effects as the law would imply from a failure to furnish the frames and sash; and no extrinsic facts or circumstances are alleged to show a natural and proximate relation of cause and effect between the alleged breach of the contract and the injury to be compensated, or the existence of any extrinsic facts, known to the plaintiff at the time of making the contract, from which it may be inferred that it was in the contemplation of the parties that defendant should be liable for any such consequences of a failure to deliver these articles. The ordinary damage—that is, that which naturally, and in the usual course of things, results from the breach of a contract for the sale and delivery of goods, wares, and merchandise—is the difference between the contract and market prices; or, in other words, the extra cost to the vendee of procuring the articles elsewhere in the market. Ordinarily, this is the damage which may be reasonably supposed to have been contemplated by the parties, when making the contract, as the probable result of its breach; and, to render a party liable for damages different and greater than this, there must be some special facts and circumstances, out of which they naturally proceed, known to the person sought to be held liable, under such circumstances that it can be inferred from the whole transaction that such damage was in the contemplation of the parties, at the time of making the contract, as the result of its breach, and that the party sought to be charged consented to become liable for it.

And such circumstances and facts, if relied upon, must be pleaded and proved. *Frohreich* v. *Gammon,* 28 Minn. 476, (11 N. W. Rep. 88.) See, also, *Paine* v. *Sherwood,* 21 Minn. 225, as to form of pleading.

There is nothing in the intrinsic nature of this contract that would take it out of the ordinary rule as to damages; and no extrinsic facts are alleged from which it would be implied that loss of rents of the building was in contemplation of the parties as a natural result of the failure of the plaintiff to furnish these frames and sash, or that

it made the contract in contemplation of a liability for any such thing. So far as alleged, the contract was the ordinary one, to furnish certain articles, of a common and ordinary kind, to be used in the construction of a building. It is not alleged that the building was being constructed for rent, or that defendant had made any contract with proposed tenants to have it ready for occupancy at a particular date, or, if so, that plaintiff had knowledge of any such facts; and, beyond all, there is no allegation that these articles were not commonly purchasable in the market, or that defendant could not, by the exercise of reasonable diligence, have procured them elsewhere, and thus avoided delay in the completion of the building. The mere fact that plaintiff knew that the articles were intended to be used in the construction of this building, or that he agreed to furnish them for such use, is clearly insufficient to take the case out of the ordinary rule as to damages. Cases where a contractor or builder engages to construct and complete a building by a certain time, he having the entire control and responsibility of its construction, are not at all analogous to a case like this. In such cases the loss of the use of the building may be said to be the direct and inevitable result of a failure to complete it within the time specified, and hence to have been within the contemplation of the parties at the time of making the contract.

Counsel for defendant, in their argument, seemed virtually to concede that the allegations of the answer were not sufficient, but contended that this was cured by testimony voluntarily introduced by plaintiff itself. We can find no such testimony in the record; and certainly all evidence introduced by defendant on this counterclaim was repeatedly objected to by plaintiff upon the express ground of insufficiency of the answer.

It follows that there must be a reversal; but, in view of another trial, in case an amendment to the answer should be allowed, it is proper to allude briefly to another question. The contract between these parties was in writing, but is silent as to the time when these frames and sash were to be furnished or delivered by the plaintiff. Upon the trial, parol evidence was admitted, over plaintiff's objection and exception, of a contemporaneous oral agreement that they were

to be furnished and delivered as fast as needed in the construction of the building. Where a contract is silent as to the time of performance, the law implies that it was to be performed within a reasonable time; and, if the contract be in writing, parol evidence of an antecedent or contemporaneous oral agreement is inadmissible to vary the construction to be thus legally implied from the writing itself. *Stone* v. *Harmon,* 31 Minn. 512, (19 N. W. Rep. 88;) *Driver* v. *Ford,* 90 Ill. 595. It was therefore error to admit parol evidence of a contemporaneous oral agreement to establish a time for delivery different from that which the law would imply from the writing itself. This rule does not, of course, exclude evidence of a *subsequent* change of the contract in that regard, either express or implied from the conduct of the parties; and the fulness with which parol evidence of all the surrounding facts and circumstances known at the time to the parties, and of material facts orally communicated to the plaintiff during the negotiations of the parties, as part of these circumstances, may be shown, as bearing upon the question of what was a reasonable time, in view of all the circumstances of the case, is clearly illustrated in *Stone* v. *Harmon,* 31 Minn. 512, (19 N. W. Rep. 88,) and *Palmer* v. *Breen,* 34 Minn. 39, (24 N. W. Rep. 322.)

Order reversed.