DICKINSON & GILLESPIE, INC. v. FRANCES P. KIRKWOOD AND ANOTHER.[1]

February 3, 1939.

No. 31,890.

[1]Reported in 283 N. W. 725.

*Stiles & Stiles,* for appellant.
*Carl F. Granrud* and *Arthur C. Wangaard,* for respondents.

LORING, JUSTICE.

Plaintiff sought to recover from the defendants a claimed balance of $331.86 on the agreed contract price for constructing a house in St. Louis Park. The defendants counterclaimed for inferior materials and defective workmanship in the sum of $750 and as a second counterclaim sought to recover special damages for two months' delay in the completion of the house for occupancy. They set up that they were required to find another apartment and to pay rent therefor for a period of two months and were put to additional expense in moving and storing their furniture and household goods and were consequently damaged in the sum of $100. The third counterclaim was for $44.36 for omitted items.

At the commencement of the trial counsel for the plaintiff announced to the court that he had agreed with counsel for defendants that "in view of the admissions in the answer and the set-off" the plaintiff's case "may be conceded as a *prima facie* case without proof" and that plaintiff might rest its case "and try the counterclaims out as if the defendants were plaintiffs." Counsel for the defendants then stated: "The only thing we deny here in your complaint is that the time within which the building was to be completed was extended from December 10, 1936, as called for in the contract, for six months to June, 1937. We don't admit that. Outside of that we will admit your case." To this statement counsel for the plaintiff responded: "With this understanding, the plaintiff rests." There was then a short conversation with regard to some minor items, and counsel for the plaintiff stated: "We will meet your claims as to defects and proper performance." Thereupon the case proceeded as if the defendants were plaintiffs, and they were allowed to close their case to the jury. The trial resulted in a verdict for the defendants in the sum of $264.55, and the case comes here upon appeal from an order denying the plaintiff's motion for a new trial.

The questions presented by the appellant are: First, whether the facts alleged in the second counterclaim for rent and moving expenses during the alleged delay in construction constituted a cause of action, or whether the proof sustained a recovery therefor; second, whether counsel for the plaintiff was entitled to make the final closing address to the jury; third, whether the verdict was justified by the evidence.

■ The second counterclaim based upon the delay in completing the dwelling house at the time specified in the contract attempted to plead special damages for the rent of an apartment and for storage and moving expense during the two-months period of the delay. There was nothing in the pleading or in the proof offered tending to show that these special damages were within the contemplation of the parties at the time they made the contract, and no proof was offered of the fair use or rental value of the house during those two months had it been completed. The latter would be the gen-

eral damages which, as the direct and inevitable result of failure to complete the house within the time specified, would have been within the contemplation of the parties at the time of making the contract. Liljengren F. & L. Co. v. Mead, 42 Minn. 420, 423, 44 N. W. 306. The record before us is barren of any evidence that the matters attempted to be pleaded as special damages were within the contemplation of the parties at the time of making the contract. Without such proof there can be no recovery under the second counterclaim. Liljengren F. & L. Co. v. Mead, 42 Minn. 420, 422, 423, 44 N. W. 306; Frohreich v. Gammon, 28 Minn. 476, 11 N. W. 88; Glaubitz v. Meyer, 149 Minn. 161, 163, 182 N. W. 1002; Smith v. Altier, 184 Minn. 299, 238 N. W. 479. This does not mean, of course, that by a subsequent modification of the contract at a time when such matters were within the contemplation of the parties special damages might not arise, but here the conversation upon which the defendants rely for proof of that fact occurred some months after the contract was made, and no modification of the contract was effected. No consideration of any kind passed to the plaintiff at the time of this conversation. Moreover, after the making of the contract the plaintiff was delayed for some weeks before it could start the construction of the house by the fact that the defendants did not get their title in shape so that they could safely go ahead with the construction.

■ We think plaintiff's counsel foreclosed himself from the right to have the closing argument to the jury by the colloquy which we have quoted between himself and the counsel for the defendants.

■ Examination of the record discloses that plaintiff's contention that the verdict is not justified by the evidence is without merit except as to the second counterclaim.

A new trial is granted unless the defendants consent to a reduction of the verdict by the sum of $100, the amount sought by their second counterclaim.

· STONE, JUSTICE (concurring in the result).

Concurring in the result, I am yet constrained to question the extent to which what the parties may have contemplated or should

have foreseen is stressed as a proper standard for measuring damages. That proposition harks back to Hadley v. Baxendale, 9 Ex. 341, 353. It is too often overlooked that the rule of that case, generally followed but much criticized, was stated in the disjunctive. It declared that damages recoverable for breach of contract "should be such as may fairly and reasonably be considered either arising naturally, *i. e.* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach." Hence, if that rule is always to govern, what the parties contemplated or should have foreseen is immaterial if the damage may reasonably be considered as "arising naturally," whatever that may mean.

The criticism of the rule of Hadley v. Baxendale in Bergquist v. Kreidler, 158 Minn. 127, 196 N. W. 964, does appear to ignore "the evident purpose of the rule, to enable judges to limit the liability for unknown risks of one who enters a contract." McCormick, Damages (1935) p. 566, note 19. But that is one reason why I am still rebellious against the extent to which the yardstick of contemplation has been used as a means by which judges have substituted their notions concerning damages for a verdict. Certainly no such judge-made rule should permit its authors to invade the constitutional province of the jury.

The problem is one of causation, nothing more. The dictum in Emerson v. Pacific C. & N. Packing Co. 96 Minn. 1, 5, 104 N. W. 573, 574, 1 L.R.A. (N.S.) 445, 113 A. S. R. 603, 6 Ann. Cas. 973, to the contrary notwithstanding, damages are not, in the ordinary case of breach of contract, "based upon mutual consent, expressed or implied." The whole question is what has been the injurious result upon one litigant of a wrong done him by the other.

However any rule is formulated, it invites error to the extent that it renders possible the denial of compensation for the proximate result of a wrong. Parties to a contract, proceeding honestly, intend performance rather than breach. No mental operation of either, except as otherwise expressed in the contract, is usually directed to the consequences of breach. Therefore, no such conse-

quences are ordinarily in the contemplation of either of them. So also in the case of an unintended tort, the wrong itself not resulting from contemplation, what is the use of judges talking about what was contemplated in the way of result? The factor of causation should be determinative. The remoteness of some results and the contribution of intervening causes should be tools keen enough, when applied by realistic thinking, to restrict damages within the limits of justice.