**OTIS ELEVATOR CO. v. STANDARD CONST. CO. (SWEDISH HOSPITAL, Intervener).**

**Civ. No. 3066.**

United States District Court
D. Minnesota, Fourth Division.

July 25, 1950.

See, also, D.C., 10 F.R.D. 404.

H. C. Mackall, E. P. Chapman, and Stinchfield, Mackall, Crounse & Moore, all of Minneapolis, Minn., for plaintiff.

Bauers & Carlson, of Minneapolis, Minn., for defendant.

Olaf R. Kelly and Kelly, Berglund & Johnson, all of Minneapolis, Minn., for intervener.

NORDBYE, Chief Judge.

Standard Construction Company (hereinafter called Standard) and the Swedish Hospital (hereinafter sometimes called Swedish) had entered into a contract in January, 1946, for certain new construction and certain alterations to the latter's hospital building. A contract was signed by Standard and the plaintiff, Otis Elevator Company (hereinafter called Otis) in February, 1946. Under that contract, Otis agreed to install specified types of elevators and dumb waiters in the new construction of the Swedish Hospital in Minneapolis. Certain dissatisfactions appear to have arisen over the contract to install the elevators. Swedish paid all except $17,526.49 of the cost of the elevators and refused to pay the remaining amount. Otis brought this action against Standard for payment of that amount. Swedish asserted that Standard acted as the agent of Swedish when executing the elevator contract with Otis and was permitted by this Court to intervene as a defendant in this action and to interpose a counterclaim against Otis. Swedish interposed certain defenses by its answer and asserted a counterclaim in the total amount of $210,607.00 against Otis. The counterclaim raises the major questions on this motion.

The first question for determination is, Does Swedish's counterclaim fail as a matter of law to allege facts which would permit recovery by Swedish against Otis? Swedish seeks recovery for (1) loss of rents from hospital rooms which could not be rented from January 1, 1947, to October 16, 1947, because of Otis' delay in installing the elevators in question; (2) for loss of rents from hospital rooms which could not be rented from October 16, 1947, to February 25, 1948, because of the faulty and negligent installation of the elevators and their resulting unusability for hospital purposes; (3) for cost of heat, light, and power for those unusable rooms from January 1, 1947, to October 16, 1947, on account of the delay, and from October 16, 1947, to February 25, 1948, on account of the faulty construction of the elevators; (4) additional costs incurred by Swedish because of time lost by its employees and interruption of

hospital activities from October 16, 1947, to the present time because of the faulty and improper functioning of the elevators in question; (5) for additional costs of construction paid out on the new construction and alterations of the hospital building because of the delay in installation of the elevators. The contract fixes no date for completion of the Otis contract, but Swedish contends that the reasonable time within which the elevators should have been installed was November 1, 1946, and that the faulty operation of the elevators after October 16, 1947—the date the elevators were turned over to Swedish for operation—is a breach of warranty that the elevators would be fit for the purpose for which they were installed—hospital use.

Otis bases its motion for summary judgment or dismissal of the counterclaim upon the theory that (1) all the damages claimed are consequential damages and that the contract to install the elevators expressly relieves Otis from liability for consequential damages; (2) that Swedish has no rights under the contract between Standard and Otis. The motions are based upon the existing record. No affidavits or other additional fact bases have been submitted.

■ As Otis contends, the elevator contract provides with respect to Otis' liability thereunder, "We shall not be liable for any loss, damage, or delay caused by acts of the Government, strikes, lockouts, fire, explosion, theft, floods, riot, civil commotion, war, malicious mischief, Act of God, or by any cause beyond our reasonable control, and, in any event, *we shall not be liable for consequential damages.*" (Italics supplied.) Minnesota recognizes the validity of such an exculpatory clause. Hollister v. Sweeney, 88 Minn. 100, 92 N.W. 525; 2 Dunnell's Digest, Sec. 2525. The real issue with respect to Otis' first contention, therefore, is, Are the damages claimed by Swedish in its counterclaim consequential or general damages?

■ Minnesota follows the rule of Hadley v. Baxendale, 9 Exch. 341; Paine v. Sherwood, 21 Minn. 225, at page 232; Frohreich v. Gammon, 28 Minn. 476, 481, 11 N.W. 88; Despatch Oven Co. v. Rauen-

horst, 1950, 229 Minn. 436, 40 N.W.2d 73, 79. This rule provides that "the damages which one party to a contract ought to receive, in respect of a breach of it by the other, are such as either arise naturally—that is, in the usual course of things—from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach." Frohreich v. Gammon, supra, 28 Minn. at page 481, 11 N.W. at page 89. The second part of the rule—that part relating to damages which the parties contemplated would arise in the event of a breach—states the test for consequential damages. Despatch Oven Co. v. Rauenhorst, supra, 40 N.W.2d at page 79. The question, therefore, is, Are the damages alleged by Swedish, as required by the first part of the rule, the direct and natural result of the breaches alleged by the counterclaim? Although Swedish separately alleges damages for the delay in installing the elevators and for damages resulting from the alleged breach of warranty arising from the elevators' improper functioning after installation, the rule of the Baxendale case, and therefore the question noted, applies to both claims. Compare Liljengren Furniture & Lbr. Co. v. Mead, 42 Minn. 420, 44 N.W. 306, and Despatch Oven Co. v. Rauenhorst, 1950, 229 Minn. 436, 40 N.W. 2d 73, 79.

In Liljengren Furniture & Lbr. Co. v. Mead, supra, plaintiff sought to recover the price of door frames and window sash furnished to defendant for a building. Defendant alleged that because of plaintiff's delay in furnishing the frame and sash, construction had been delayed, and he had lost rent which he otherwise would have obtained from the building. The court held that such damages were consequential, not direct, damages and that because they had not been pleaded, plaintiff, not defendant, could recover. Speaking for a unanimous court, Justice Mitchell wrote, 42 Minn. at pages 423, 424, 44 N.W. at page 307, "The loss of rents are not such direct, necessary, and natural effects as the law would imply from a failure to furnish the frames and sash; * * *. The ordinary damage— that is, that which naturally, and in the

usual course of things, results from the breach of a contract for the sale and delivery of goods, wares, and merchandise—is the difference between the contract and market prices; or, in other words, the extra cost to the vendee of procuring the articles elsewhere in the market. * * * The mere fact that plaintiff knew that the articles were intended to be used in the construction of this building, or that he agreed to furnish them for such use, is clearly insufficient to take the case out of the ordinary rule as to damages. Cases where a contractor or builder engages to construct and complete a building by a certain time, he having the entire control and responsibility of its construction, are not at all analogous to a case like this. In such cases the loss of the use of the building may be said to be the direct and inevitable result of a failure to complete it within the time specified, and hence to have been within the contemplation of the parties at the time of making the contract."

In Despatch Oven Co. v. Rauenhorst, supra, the Minnesota Supreme Court held that loss of profits from sales lost as a result of the seller's breach of warranty are the consequence, not the direct result of the breach of warranty and therefore not recoverable under an exculpatory clause relieving the seller from liability for consequential damages. As authority the court cited Boylston Housing Corp. v. O'Toole, 321 Mass. 538, 74 N.E.2d 288, 172 A.L.R. 1251. There, the Massachusetts Supreme Judicial Court held that loss of rents on apartments in an apartment building in which the installation of the elevator was delayed, and upon which delay the claim for damages was predicated, were consequential damages and therefore were not recoverable in view of a provision identical with the one in the instant case which relieved the elevator company from consequential damages.

Winslow Elevator & Machine Co. v. Hoffman, 107 Md. 621, 69 A. 394, 17 L.R.A., N.S., 1130 also holds that losses of rent and profits resulting from delay in installing an elevator and for improper functioning after installation are consequential, not direct damages. And in Monarch Brewing Co. v. Geo. J. Meyer Mfg. Co., 130 F.2d 582, the

Court of Appeals for the Ninth Circuit held that under Wisconsin law loss of profits was consequential damages.

In view of the Minnesota law and the better rule, as applied to the facts of this case, Swedish's claim for damages arising out of alleged loss of rent from hospital rooms during the period of delayed installation of the elevators and during the period of their defectiveness are consequential damages and cannot be recovered in view of the exculpatory clause relieving Otis from such liability. The cases cited and the rule announced therein are directly in point here. For like plaintiff in the Liljengren case, Otis here was furnishing goods, material, and workmanship for construction of part of the building. The situation in the Boylston case is essentially identical with the instant one. And that case was cited by the Minnesota Supreme Court in the Despatch Oven Company case as authority for the proposition that loss of profits was consequential damages. The court did not distinguish between the source of the profits (rent or sale of goods). Swedish here seeks recovery for loss of rents from the rooms affected by the delay and the faulty elevator operation. Like in the cited cases, Swedish in reality seeks loss of rental profits. The cases cited establish that such damages are and would be consequential damages in Minnesota and under the better rule which would be applied here.

Swedish contends that the damages sought here as rent losses are part of the "loss of use", and that such damages are general (direct), not consequential damages. But, as Justice Mitchell pointed out in Nelson v. M. & St. L. Ry. Co., 41 Minn. 131, at page 132, 42 N.W. 788, at page 789, "The term 'rental value' is but another form of saying the 'value of the use'." The "loss of use" for which Swedish seeks to recover here is, of course, the *value* of the use lost as a result of the alleged breaches by Otis. So the "loss of use" of which Swedish speaks is the "value of the use" of which Justice Mitchell speaks. And that is the same as "rental value." As noted, rental value as sought here is a consequential damage.

The last two lines of the quotation from Justice Mitchell's opinion, quoted above in the excerpt from the Liljengren case, are relied upon by Swedish. But that part of Justice Mitchell's opinion weakens rather than strengthens Swedish's position. For Justice Mitchell declared therein that cases in which the loss of use may be direct damages—those in which the contractor contracted to build the entire building—were not in point in the Liljengren case which, like the instant one, involved construction of only part of the building. Many of Swedish's citations bear upon cases in which the contractor agreed to build or install the entire unit or building involved, not merely part of it.

In view of these premises, therefore, the first and second damage claims noted above as made by Swedish for loss of rental income are consequential damages and must be denied here because of the exculpatory clause relieving Otis from such liability.

■■■ Swedish's claim for cost of heat, light, and power for the unused rooms, the cost of additional labor for operation of the hospital, the value of the time lost by employees because of faulty operation of the elevators, and the additional costs of construction in the new construction and alterations of the hospital which resulted from the delay in installing the elevators must also be rejected. They are consequential damages, here. Direct damages must arise naturally and in the usual course of things from the breach itself. They must be the "direct, necessary, and natural effects" of the breach, Liljengren Furniture & Lbr. Co. v. Mead, supra, not the consequence from special circumstances. Despatch Oven Co. v. Rauenhorst, supra.

The damages arising from additional time consumed by employees as a result of the alleged faulty operation of the elevators and the resulting increased operating costs of the hospital is not damage which naturally and in the usual course of things follows from the breach alleged here. Other circumstances enter into the picture. The damages alleged depend upon the amount of hospital operational work which had to be done and which required employees. They depend upon the number of patients, their condition, the type and nature of the patients' illnesses, etc. The mere alleged breach of the elevator installation contract did not give rise to the damages. The special circumstances which enter into the question of damages must be recognized. They are the facts which exist apart from the breach. They intervene between the breach and the loss. Their causal relationship to the damages seems clear. In Monarch Brewing Co. v. Meyer Mfg. Co., 9 Cir., 130 F.2d 582, the buyer sought to recover of the seller for alleged extra labor cost arising out of the faulty operation of the beer bottling machine warranted by the seller. The court denied the relief because the damages sought were consequential, not direct, damages, and because the contract there (like here) relieved the seller of liability for consequential damages. And in American Bridge Co. of New York v. Am. District Steam Co., 107 Minn. 140, 119 N.W. 783, the Minnesota Supreme Court necessarily held that additional salary paid to the construction engineer during the additional period of construction required, because of the seller's failure to complete its work was a consequential, not direct, damage suffered from the breach. Although the situation involved labor in construction of the building rather than labor losses due to operational failures arising after construction, the same test of damages applies and the situations, at least here, are substantially similar. For here it is claimed that the elevators never had been properly installed. And in both the Bridge Company case and here, the claim is for additional labor costs arising from failure to furnish the contract res in proper condition within the time allegedly required. The instant case is even more clear than the Bridge Company case. For there the additional labor cost appears to have been expended at least in part upon the work which was not performed on schedule. Here the additional labor cost was spent on other (hospital operational) work which was different in kind and nature from that work allegedly performed improperly by Otis and for which Swedish seeks damages.

In American Bridge Company v. American District Steam Co., supra, the Minnesota Supreme Court also recognized that extra coal used by the buyer for generating steam because of the seller's delay in completing its work likewise were consequential damages. So also were the costs for erecting a temporary smoke stack, rent for other boilers, and for office rent. Certainly the heat, light, and power furnished to the hospital rooms in question during the time in question also are consequential damages. No difference between those expenses and the expense of the extra coal required for heating in the American Bridge case is apparent in principle. The additional cost of fuel and other utilities was required both there and in the instant case as a result of the breach. The additional heat, light and power costs alleged here, are, in reality, no different in principle from expenses of operation. They were expenses incurred for operating the hospital. The fact that they did not earn income does not prevent them from being such expenses. In substance, they were increased operating expenses just as additional labor required for operating the hospital and are not distinguishable from the time lost by employees in performing their duties. The additional heat, light, and power expenses are, therefore, consequential, not direct, damages.

The alleged additional costs for building construction incurred by reason of the alleged delay in elevator construction are consequential damages. The increased construction costs allegedly arose from labor, rental equipment, and electrical power, etc. But the labor market existing when they were incurred, the cost of materials after the delay, the work to be done, the period when the main contractor involved could perform the work, the cost of renting equipment, and many other special circumstances intervene between the alleged breach and the result. Damages consisting of additional costs for other work on the building are not the natural, necessary, and usual result which follows here from the breach of a contract to install elevators. The other work yet to be done on building construction is, in light of the facts noted, a circumstance which must be recognized.

In American Bridge Co. v. American District Steam Co., supra, the Minnesota Supreme Court expressly held that rental of a boiler during construction because of the delay in construction was an extrinsic fact which, when pleaded, could be proved as an element of consequential damage. Swedish claims additional expenses incurred for renting construction equipment as part of its damages here. The additional cost of construction caused by delay and additional cost of hospital operation caused by the alleged breach of warranty are not distinguishable here in so far as the directness of their relationship to the breach of the contract is concerned. Both occur here as a consequence, not the natural, direct, usual result of the breach.

The English cases cited by Swedish are not controlling in Minnesota, and the American cases cited are at variance with Minnesota law in so far as they cannot be distinguished. Swedish's theory of damages that loss of use, not the elements composing the loss creates the damages in the instant case distinguishes between form rather than substance. The Minnesota cases noted by Swedish do not support the contention that loss of use constitutes direct damages here. Swedish asks for separate damages for the alleged losses noted, not for damages for a single, aggregate, loss of use. Although Swedish might by amendment seek to change its theory of damage in form to a single loss of use, it seems apparent that the elements which Swedish indicates would comprise it are consequential damages individually. The loss of use claimed would merely be an aggregate of the consequential damages. To hold that together they would be direct, general damages but that individually the elements would be special damages would ignore their real character. Although under certain circumstances the elements of damage claimed by Swedish might be evidence of the value of loss of use which would be recoverable as general damages, that situation is not present here because any so-called loss of use herein would necessarily be based upon the premise that such damage was within the contemplation of the parties, and hence consequential damages. Loss of use, as Swedish seeks

to invoke it here, really is loss of profits and is a consequential, not direct damage.

■ In view of these premises, therefore, the exculpatory clause relieving Otis of liability for consequential damages under its contract is effective, and Swedish is not entitled to the damages it seeks in its counterclaim. The exculpatory clause prevents the recovery sought. This conclusion renders discussion of Otis' other arguments concerning its right to a summary judgment on the counterclaim of Swedish unnecessary. Otis' motion for summary judgment as to Swedish's counterclaim seems proper upon the premise that the damages therein are not damages for which Otis is liable under the contract. If there is any seeming injustice to Swedish in denying it damages by reason of Otis' alleged breach of contract, that result is solely due to the terms of the contract by which Swedish is necessarily bound. Although the Court should not grant summary judgments liberally, the facts assumed to be true here present no genuine fact issue upon the question of damages. The issue is a legal, not a factual, one. To require Otis to engage in a protracted trial which, in view of the applicable law, would produce a result like the one now reached would thwart the purpose for which the summary judgment rules were created. The indefiniteness which prevents summary judgment in some cases is not present here.

■ Otis also asks for summary judgment against Standard because the affirmative defenses set forth in Standard's answer allegedly are insufficient and present no genuine issue on any material fact to which they relate. But Standard's answer embodies a qualified general denial. It denies all except that which is specifically admitted or otherwise answered. Consequently, issues such as the amount due upon the contract, Otis' performance of the contract, etc., exist between Otis and Standard. These are issues upon material facts so far as this record shows. They exist even if the affirmative defenses fail to state any valid defenses. Consequently, a summary judgment cannot be granted. Federal Rules of Civil Procedure, Rule 56, 28 U.S.C.A.

Otis also moves that allegations set forth in Paragraphs III and IV of Standard's answer be dismissed or stricken upon the ground that they are immaterial and irrelevant. Paragraph III alleges that the written acceptance of the elevators by Standard which included the statement that the elevators were satisfactory and in accordance with the contract duties of Otis were signed because Otis refused to turn over the elevators to Standard and Swedish either for use or trial until that document was signed. Standard alleges that the elevators were not installed satisfactorily. Paragraph IV of Standard's answer alleges that Otis knew that Swedish was to pay for the work, that Swedish refused to pay for the work because of the counterclaim which it possessed, and that Swedish had ordered Standard not to pay for the work.

■ Paragraph III in effect attempts to allege that the documents involved were signed unwillingly and without knowledge of the facts which were stated therein. The allegation is broad. A variety of facts could exist under them. But neither Otis nor Standard presents any affidavits which would permit the Court to determine exactly what were the facts. In the absence of facts sufficient for the Court to act upon, a motion for dismissal should be denied. Acceptances and releases made under what the facts might show to be coercion might not be binding here. Otis states no facts and cites no cases in support of its position. Although the burden for sustaining the defense of coercion is on Standard, the burden of putting Standard to its burden is upon Otis on this motion. Inasmuch as the full fact situation is not presented to the Court, no basis for a finding either way is presented. Otis' motion for dismissal or striking of Paragraph III of Standard's answer should be denied.

■ Otis' motion to dismiss or strike Paragraph IV of Standard's answer also fails to be persuasive. Although a person who signs a contract in his own name, without indicating that he signs as agent of another person, is bound by the contract individually even if he in fact signs as agent, Rowell v. Oleson, 32 Minn. 288, 20

N.W. 227; Cargill Elevator Co. v. Sullivan & Co., 171 Minn. 507, 214 N.W. 510; it also is clear that the principal not named in the contract is nevertheless liable thereon. Wm. Lindeke Land Co. v. Levy, 76 Minn. 364, 79 N.W. 314. Consequently, the Minnesota Supreme Court has held that the defendant who claims to have acted as agent may show that he in fact did act as agent and for whom he acted. Wm. Lindeke Land Co. v. Levy, supra; Saunders v. Commercial Credit Trust, 192 Minn. 272, at page 275, 256 N.W. 142. Quoting Baren Parke's dictum in Higgins v. Senior, 8 M. & W. 844, the Minnesota Supreme Court held, 76 Minn. at page 365, 79 N.W. 314, at page 315, in the Lindeke Land Company case, " 'There is no doubt that * * * it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract, on the one hand, to, and to charge with liability, on the other, the unnamed principals; and this, whether the agreement be or be not required to be in writing by the statute of frauds. And this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom, on the face of it, it purports to bind, but shows that it also binds another, by reason that the act of the agent in signing the agreement, in pursuance of his authority, is, in law, the act of the principal.' "

Standard's allegations in Paragraph IV are related to its allegation of agency for Swedish, including the scope of agency. Although the paragraph may state no defense to the liability of Standard on the contract with Otis, it does concern a matter which can properly be shown at the trial. Hence, it should not be stricken or dismissed. Otis Elevator Co. v. Berry, 28 Cal.App.2d 430, 82 P.2d 704, is relied upon by Otis but that case does not state the law applicable in Minnesota. It therefore must be disregarded in so far as it is in conflict with the Minnesota rule enunciated in the above-cited cases. For these reasons, Otis' motion to dismiss or strike Paragraph IV of Standard's answer should be denied.

In view of these premises, Otis' motion for summary judgment in its favor with respect to Swedish's counterclaim is proper and is therefore granted. Otis' motions are in all other respects denied. It is so ordered. An exception is reserved.