Dale LUICK, doing business as Luick
Construction Company, Plaintiff-
Appellant,

v.

GRAYBAR ELECTRIC COMPANY, INC.,
Defendant-Appellee.

GRAYBAR ELECTRIC COMPANY, INC.,
a corporation, Plaintiff-Appellee,

v.

NATIONAL SURETY CORPORATION,
Defendant-Appellant.

Nos. 72-1216, 72-1217.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 5, 1972.

Decided Feb. 13, 1973.

Rehearing Denied March 8, 1973.

Bruce E. Bohlman, Fargo, N. D., for appellants.

Michael L. Culhane, Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

This appeal concerns two separately filed actions, one in North Dakota and the other in Minnesota. The cases involve the same parties with the exception that the surety was sued in the Minnesota case. The Minnesota case subsequently was transferred to North Dakota and the cases although not consolidated were discussed together at a pretrial hearing and disposed of separately in a single unpublished memorandum by the late Judge George S. Register. They involve common questions of law and fact and will be considered to-

gether in this opinion. The cases concern an alleged breach of contract for late delivery of materials by a seller and the refusal of the buyer to pay for the unpaid balance due on the purchase.

In May 1968, Dale Luick, doing business as Luick Construction Company, contracted with Graybar Electric Company to purchase underground cable for $142,514 to be shipped the second week of July 1968 to Badger, Minnesota, for a job with Wickstrom Telephone Company. Graybar, unable to get delivery from its suppliers, did not deliver the cable to Luick in substantial amounts until November 1968. Luick, who was supposed to complete the Wickstrom installation by the end of 1968, did not complete the work until spring 1969.

In June 1969, Luick and Graybar again contracted for Graybar to sell $214,000 of cable to be delivered on or before August 1, 1969, to Underwood, Minnesota, for a job with Park Region Telephone Company, which was scheduled to be completed by the end of 1969. Graybar could not deliver the cable in substantial amounts until late October 1969. Luick completed the Park Region installation in spring 1970.

In October 1970, Luick filed suit in the North Dakota state court against Graybar for lost profits, the rental value of his idle equipment, and added construction costs for the Wickstrom and Park Region installations in the approximate amount of $230,000. On Graybar's motion, the case was removed to the Federal District Court of North Dakota.[1] Graybar answered denying that it was liable for late delivery damages due to exculpatory clauses allegedly contained in contracts for both installations and counterclaimed for the value of the unpaid materials, $85,864.49.

While Luick's suit was pending, Graybar filed suit against National Surety Corporation, Luick's bonding company, in Minnesota Federal District Court in December 1970 for the value of the unpaid materials and interest. National Surety answered alleging Luick's same claim for late delivery damages. This case was transferred to North Dakota on April 1, 1971.[2]

On July 23, 1971, Graybar, as plaintiff, moved for a summary judgment against National Surety in case No. 72–1217. On March 2, 1972, the District Court, in its unpublished memorandum and order, granted Graybar's motion for summary judgment and dismissed National Surety's counterclaim. On the same day and in the same order, the District Court, on its own motion, dismissed Luick's complaint (No. 72–1216) for failure to state a cause of action.

Since National Surety did not respond to Graybar's requests for admissions, the validity of Graybar's claim for materials furnished stands admitted. No real issue has been raised on the delivery or value of the materials furnished. Applying the summary judgment provision of Rule 56(c), Fed.R.Civ.P., the District Court found that there was "no genuine issue as to any material fact." In making this conclusion, the District Court found that National Surety did not respond to Graybar's requests for admissions under Fed.R.Civ.P. 36(a) and therefore admitted all matters contained in the requests. Graybar had requested that National Surety admit that the materials had been delivered for the Park Region job and that Luick owed $85,864.49, as a fair value for the delivered and unpaid materials. These requests were the basis of the Graybar complaint and its counterclaim in Luick's suit.

1. Jurisdiction is based on 28 U.S.C. § 1352, which provides for concurrent federal and state jurisdiction on a bond executed under any law of the United States.

2. The same counsel represented Luick and National Surety and filed a motion to con-

solidate these two cases on July 13, 1971. The District Court did not specifically rule on this motion, but disposed of both cases in the manner described in the text.

■ Unanswered requests for admissions render the matter requested conclusively established for the purpose of that suit. Fed.R.Civ.P. 36(a) and (b). See Moore's Fed.Prac. § 36.01(7). Also a summary judgment may be based on admitted matter. Moosman v. Joseph P. Blitz, Inc., 358 F.2d 686, 688 (2d Cir. 1966). We agree with the District Court's determination on the contract amount owed by Luick to Graybar.

■ This leaves for consideration the question of whether the late delivery of the materials gave rise to an actionable claim for damages by Luick. We think Luick's suit for damages raises substantial factual issues that are not properly susceptible of determination in a summary judgment proceeding.

Graybar contends that an exculpatory clause [3] in the alleged contracts exonerated Graybar from any liability for damages due to late delivery, and further that this exclusion-of-remedies clause is valid and enforceable under Minn.Stat.Ann. § 336.2–719 (1965) (a provision of the Uniform Commercial Code in Minnesota).[4] The District Court held that the exculpatory clauses in the alleged contracts were enforceable, that the late delivery damages were special or consequential under Minnesota law, and, therefore, that Graybar was not liable for the damages attributable to late delivery. This well may be but we don't think that conclusion can be reached in a summary judgment proceeding.

The question of whether these exculpatory clauses are enforceable raises genuine factual issues, since Luick argues that there is a dispute whether these exculpatory clauses were included within the terms and conditions of the purchase contracts. The District Court assumed they were, and, again well they might be, as the exculpatory clauses are in each contract as No. 6 of the printed form on Terms and Conditions of Sale. However, Luick contends otherwise, and from the available record it is unclear exactly what written documents constituted the parties' contracts. In addition, Luick raises the issue of "unconscionability" of the exculpatory clauses. Since Luick has not admitted through any failure to answer a request for admissions that these exculpatory clauses were included in the contracts, he should be allowed to introduce evidence concerning the formation of the two contracts and the issue of unconscionability.

We, therefore, think Luick's complaint raises factual issues which preclude the issuance of a summary judgment. Parmelee v. Chicago Eye Shield Co., 157 F. 2d 582, 586–587 (8th Cir. 1946). Because of the drastic nature of the summary judgment entry, the right to that judgment must be shown "with such clarity as to leave no room for controversy . . . [and the other party

3. That clause in part reads:
   "6. Delay in Delivery. . . . Factory shipment or delivery dates are the best estimates of our suppliers. In no case shall seller [Graybar] be liable for any consequential or special damages arising from any delay in delivery."

4. That section reads in part:
   "336.2–719 Contractual Modification of Limitation of Remedy
   "(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on litigation and limitation of damages,
   "(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
   "(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
   \* \* \* \* \*
   "(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

must] not be entitled to recover under any discernible circumstances." Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213, 216 (8th Cir. 1951); *accord,* Cervantes v. Times, Inc., 464 F.2d 986, 993 (8th Cir. 1972). In order for us to hold that the summary judgment procedure disposing of Luick's claim was proper, we would have to rule on the basis of the pleadings and the very limited documents submitted with the motion for summary judgment that Luick's claim was either a sham, frivolous or unmeritorious. See Annot., 8 A.L.R.3d 1361 (1966). This we cannot do on the present sketchy record.

Although parties to a contract may modify, limit, or exclude remedies, they cannot do so unconscionably. Minn. Stat.Ann. § 336.2–719(3) (1965). Luick argues that Graybar knew or should have known that the purchase of the cable would have been impossible from other sources and that exclusion of any damages for late delivery under these circumstances was unconscionable. Although we offer no view on whether Luick's claim of unconscionability is valid, he should be given a reasonable opportunity to present evidence on this issue. Minn.Stat.Ann. § 336.2–302(2) (1965). It is then within the province of the trial court to determine the issue of unconscionability. Minn.Stat.Ann. § 336.2–302 (1965), Official UCC Comment 3.

■ The discussion of one further matter of law is advisable. The District Court held that the late delivery damages claimed by Luick were special or consequential damages under Minnesota

law and excluded by the exculpatory clauses. We agree, provided the exculpatory clauses are part of the purchase contracts and are not unconscionable.

The District Court properly held that the law of Minnesota applied in determining whether the claimed damages for lost profits, lost rental value for idle equipment, and added costs due to construction during the wet springs were direct or special damages.[5] The District Court held that Minnesota follows the established rule of Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854), which held that direct damages were those that "may reasonably be supposed to have been in the contemplation of the parties." In applying the rule of Hadley v. Baxendale, Minnesota courts have held that loss of rents[6] and loss of profits from sales[7] are special and not direct damages. According to the rationale of these cases the claimed damages due to late delivery would also be special damages under Minnesota law. Since the damages are special or consequential, the exculpatory clauses, if part of the contracts and not unconscionable, would preclude the defendant from any recovery. Minn.Stat.Ann. § 336.2–719 (3) (1965); Minn.Stat.Ann. § 336.2–715 (1965), Official UCC Comment 3; Minn.Stat.Ann. § 336.2–719 (1965), Official UCC Comment 3.

Our discussion of Luick's claim is not to be interpreted as expressing any opinion on the merits of those claims.

The summary judgments entered are reversed and both cases are remanded for further proceedings consistent with this opinion.

5. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Krauss v. Greenbarg, 137 F.2d 569, 570 (3d Cir. 1943).

6. Liljengren Furniture & Lumber Co. v. Mead, 42 Minn. 420, 44 N.W. 306 (1890).

7. Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 40 N.W.2d 73 (1949); Minn.

Stat.Ann. § 336.2–715 (1965), Minn. Code Comment Subsection 2–715(2). Otis Elevator Co. v. Standard Const. Co., 92 F. Supp. 603 (D.Minn.1950), discusses more fully this issue of Minnesota law on direct and special damages.